JOHANN, Appellant, vs. MILWAUKEE ELECTRIC TOOL COR-
PORATION, Respondent.*

*June 3—July 3, 1953.*

* Motion for rehearing denied, with $25 costs, on September 11,
1953.

For the appellant there was a brief and oral argument by *Edward S. Grodin* of Milwaukee.

For the respondent there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, and oral argument by *Suel O. Arnold*.

FRITZ, C. J.    The plaintiff, Albert Johann, is an inventor; and the defendant, Milwaukee Electric Tool Corporation is engaged in the tool-manufacturing business. In 1939, plaintiff and A. F. Siebert, president of the defendant company, had discussed the possible invention of a pneumatic tool for the purpose of facilitating the removal of dents from automobile bodies; and they also discussed the matter of patenting such invention and subsequently selling and manufacturing the pneumatic tool. Johann then invented and perfected such a tool and in December, 1939, he assigned his rights in the tool to the defendant, in order to enable the defendant to apply for and secure patent rights thereto. He was paid no consideration for the assignment, because of contemplated royalty payments, which were to be the full consideration for said assignment from plaintiff to defendant. The letters patent covering the pneumatic tool were issued on October 28, 1941, and given United States patent-registration No. 2260624. That tool was known as the "Johann tool." In 1942, defendant secured patent rights on another pneumatic tool very similar to the "Johann tool" which became known

as the "Lieber-Beckwith tool." The reason for taking out this second patent was because the first patent covering plaintiff's invention infringed an earlier patent, and the "Lieber-Beckwith tool" changed the device enough so that defendant's patent attorney thought it would not infringe such earlier patent.

In about August, 1945, defendant manufactured and sold to the public such a pneumatic tool based on the "Lieber-Beckwith" design, and on each of these pneumatic tools, so sold, defendant attached a metal identification disk bearing the U. S. patent-registration number of the "Johann tool" and also the registration number of the "Lieber-Beckwith tool." The patent-registration number of the "Johann tool" was first in order on said disk. Prior to World War II, defendant had used a metal identification disk with the single registration number of the "Lieber-Beckwith" patent and no disk bearing double registration numbers was placed on such tools until after the Second World War.

It was stipulated between the parties that all of said pneumatic tools manufactured by the defendant from August 1, 1945, through December 31, 1948, which were 6,225 in number, bore a metal identification tag attached to said tools; and that inscribed on all of said metal tags so attached, were the patent-registration numbers 2260624 (Johann) and 2282111 (Lieber-Beckwith) in that order. Therefore, upon this stipulation, plaintiff claims to be entitled to a full recovery of $10,000 on the theory that defendant, by intentionally using the Johann patent number for three years, obligated itself to pay $2 for every pneumatic unit manufactured and sold, and that consequently since $10,000 was the maximum recovery agreed upon, that amount was due and owing to plaintiff. Plaintiff did not discover that defendant was using said identification tags with both U. S. patent-registration numbers until 1948. This action was commenced on May 27, 1949.

Plaintiff predicates his cause of action upon an alleged oral contract entered into by him with the defendant through its president, A. F. Siebert, in 1940, by which plaintiff claims to be entitled to a royalty of $2 a unit on all pneumatic tools manufactured and sold under the Johann patent. Plaintiff concedes that unless such contract can be established he is not entitled to any recovery; but he contends that if the facts do establish an enforceable oral contract, then the defendant, on the theory announced above, must pay him the full contract price of $10,000.

Upon the trial of the action, the court found that the evidence "is undisputed that defendant and the plaintiff did not at any time enter into any oral or written contract for the payment of any royalty, on the theory that there was no meeting of the minds upon such contractual basis." Upon that finding and a subsequent finding that there had been a complete accord and satisfaction of all claims which plaintiff might have against the defendant company by virtue of an agreement signed by plaintiff in 1942, the court directed a verdict for defendant and dismissed plaintiff's complaint upon its merits.

Plaintiff contends the trial court erred in directing a verdict and in not allowing the issue as to whether there was a contract entered into between the plaintiff and defendant to be decided by the jury. Plaintiff's contention in that regard is correct. It is well-settled law in this state that a verdict may be directed only when the evidence gives rise to or admits of no disputes as to the material issues, or when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion. *Bornemann v. Lusha,* 221 Wis. 359, 366, 266 N. W. 789, and *Rusch v. Sentinel-News Co.* 212 Wis. 530, 250 N. W. 405.

There is much evidence in the record tending to negative plaintiff's contention that a verbal agreement was entered

into by him with the defendant company. One of the strongest pieces of evidence tending in that direction is the fact that A. F. Siebert, in behalf of defendant, had a written agreement drafted containing substantially the same provisions plaintiff contends were embodied in the verbal agreement, and plaintiff refused to execute such written agreement. Siebert also testified positively that in the discussions with plaintiff as to entering into a royalty agreement, such agreement was always made contingent upon defendant being able to make and sell the pneumatic tools embodying .plaintiff's invention; and the evidence establishes that the defendant never attempted to sell the Johann tool because of fear of an infringement suit. The plaintiff on his part gave conflicting evidence that tended in some degree to discredit his contention with respect to the verbal agreement. However, the following testimony by Siebert does tend to support plaintiff's contention that there was such a verbal agreement:

"*Q*. But you did make an oral agreement with him? *A*. Yes, there was an oral agreement with Mr. Johann that, if we could manufacture a hammer that he could produce, that we would pay him a royalty. . . .

"*Q*. Now when was that agreement made with Mr. Johann as to the royalties? *A*. I imagine it was made somewhere in 1940. I don't know, 1939 or 1940, somewhere in that period. . . .

"*Q*. What arrangement did you have with Mr. Johann with reference to paying him? *A*. I said, when we started out, 'Mr. Johann; if you can make us a hammer, we will be very happy to pay you a royalty, any hammer that we can make and sell.' That was the beginning of the talk with Mr. Johann.

"*Q*. How much did you agree to pay him? *A*. I think it was $2 a unit."

Also when Siebert was called as an adverse witness he stated:

"In my negotiations and contract with Johann, it was agreed that he would be paid a royalty of $2 per unit with a

maximum of $10,000. This was our oral agreement with Johann in about 1940. I was sincere about paying him a royalty per unit."

Considering the testimony of plaintiff that such a contract did exist, and the admitted statements by A. F. Siebert that there was an oral agreement in 1940 to pay $2 a unit, there was sufficient credible evidence to reasonably permit unbiased and impartial minds to find that the verbal agreement alleged by plaintiff had been entered into. Taking the evidence introduced by both sides and examining it in the light most favorable to the party against whom the verdict is to be directed, the jury should have been given the opportunity to determine whether or not there was any oral agreement entered into in 1940. The propriety of directing a verdict must always stand the tests stated in *Bornemann v. Lusha, supra,* and *Rusch v. Sentinel-News Co., supra.*

Defendant alleged in its answer that plaintiff was paid $2,000 in full settlement for all special services rendered to and work performed for the defendant. The court in its decision regarding said payment found that it was a good accord and satisfaction. The effect of such a finding, if correct, would, of course, preclude recovery, even if the prior oral contract were enforceable, since it would be in effect tantamount to a general release of all plaintiff's claims against the defendant.

After the Lieber-Beckwith tool was developed, and the defendant commenced to sell and manufacture the same, the plaintiff made demand upon the defendant for payment of royalties on the ground that plaintiff's basic invention was embodied in the Lieber-Beckwith tool. After some negotiations between plaintiff and defendant, an agreement was entered into between the parties under date of October 15, 1942, reading as follows:

## "AGREEMENT

"This agreement entered into this 15 day of October, 1942, by and between Albert S. Johann and Milwaukee Electric Tool Corporation, both of Milwaukee, Wisconsin.

"The undersigned, Albert S. Johann, acknowledges receipt of check No. M21484 dated October 10, 1942, in the amount of one thousand dollars ($1,000) together with one noninterest bearing note payable in the amount of one thousand dollars ($1,000) due for payment to Albert S. Johann by Milwaukee Electric Tool Corporation on April 15, 1943, and hereby agrees to accept same in full settlement for special services rendered to, and work performed for the Milwaukee Electric Tool Corporation.

"The Milwaukee Electric Tool Corporation hereby agrees that it will continue to place orders for fender hammer-pipe frames, as needed, with Albert S. Johann, provided price and quality remain competitive, with the exception that Milwaukee Electric Tool Corporation retains the right to manufacture these pipe frames in their own factory at any time, should they so desire.

"Executed the day and year above indicated.

"Albert S. Johann,<br>
"Milwaukee Electric Tool Corp.,<br>
"By A. E. Lange,<br>
"Secretary."

It will be noted that this agreement provides that the $2,000 to be paid plaintiff was for services and not for royalties. The testimony is conflicting as to whether said agreement was to constitute a complete accord and satisfaction between the parties as to all claims by the plaintiff, including royalties on his invention. Siebert's testimony on the whole record tended to establish that the $2,000 payment, pursuant to the October 15, 1942, agreement was in full settlement of all claims of plaintiff; but, nevertheless, Siebert did testify in one place as follows:

"*Q.* And again, the $2,000 mentioned in here that was given to Mr. Johann had nothing to do with any royalty agreement between the two of you? *A.* No, sir."

We are of the opinion that there was sufficient evidence in the record on this issue of accord and satisfaction to require that said question be submitted ·to the jury as to whether the agreement of October 15, 1942, was intended by the parties to cover all claims which plaintiff might have for royalties on his invention.

The third and last point to be considered on this appeal is whether the plaintiff is entitled to recover the $10,000 for royalties prayed for in his complaint, if the jury had found the existence of the verbal contract as contended by plaintiff, and that the written agreement of October 15, 1942, was not intended by the parties to constitute a release of plaintiff's claims for royalties. It is conceded that the defendant did not manufacture or sell any pneumatic tools embodying plaintiff's invention, and that all of the pneumatic tools which it did manufacture and sell embodied the invention under the Lieber-Beckwith patent.

Plaintiff contends that because defendant manufactured and sold 6,225 pneumatic tools having identification tags attached which bore the patent-registration number covering the Johann invention, as well as the patent-registration number relating to the Lieber-Beckwith patent, the defendant is estopped to deny that such tools did embody plaintiff's invention. Defendant's evidence was to the effect that such tags were ordered through error by an employee of the defendant company who purchased such tags; and that when the mistake was called to the attention of Siebert by his patent attorney, the defendant immediately discontinued the use of such tags bearing both patent-registration numbers, and thereafter used tags bearing only the patent-registration number of the Lieber-Beckwith invention. However, Sie-

bert did testify at one point that the use of such tags bearing both patent-registration numbers was intentional.

Under the decisions of *Singer Mfg. Co. v. June Mfg. Co.* 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and *Andrews v. Landers* (C. C.), 72 Fed. 666, we are satisfied that the defendant company, by attaching the identification tags to the 6,225 tools (which tags bore both the patent-registration numbers of the Johann tool and that of the Lieber-Beckwith tool), is estopped thereby to deny that the tools bearing such tags did not embody plaintiff's invention. The defendant cannot avoid such estoppel by contending that some underling made the mistake in ordering such tags. By attaching such tags to the tools which were sold, the defendant held out to the customers purchasing the same that such tools did embody plaintiff's invention.

Therefore, it is necessary that the cause be remanded for a new trial on the issues of the existence of the verbal contract providing for royalties as alleged by plaintiff, and as to whether the subsequent agreement of October 15, 1942, was intended by the parties as a release of all rights of plaintiff for royalties. If both of these questions at the new trial should be answered in favor of the plaintiff, then plaintiff would be entitled to judgment in the sum of $10,000 as prayed for in his complaint inasmuch as more than 5,000 pneumatic tools were marketed by defendant having identification tags attached bearing the patent-registration number covering plaintiff's invention.

*By the Court.*—Judgment reversed and cause remanded for a new trial consistent with this opinion.