JOHANN, Respondent, vs. MILWAUKEE ELECTRIC TOOL CORPORATION, Appellant.*

*September 13—October 11, 1955.*

* Motion for rehearing denied, without costs, on December 6, 1955.

For the appellant there was a brief by *Dougherty, Arnold & Philipp* of Milwaukee, and oral argument by *Suel O. Arnold*.

For the respondent there was a brief and oral argument by *Edward S. Grodin* of Milwaukee.

CURRIE, J. The following issues are presented on this appeal:

(1) Whether there is insufficient credible evidence to support the findings of the jury made in their special verdict.

(2) Whether the trial court erroneously misinterpreted the mandate of this court in *Johann v. Milwaukee Electric Tool Corp.* (1953), 264 Wis. 447, 59 N. W. (2d) 637, in restricting the issues to be litigated at the second trial to the two questions submitted in the special verdict, and in denying a motion of defendant made during the course of the trial to amend his answer so as to set up additional defenses.

(3) Whether this court should recede from its determination made on the prior appeal wherein it held that defendant was estopped to deny that certain tools manufactured and sold by it, having attached thereto identification tags bearing the patent-registration number of the patent issued upon plaintiff's invention, actually embodied such invention.

(4) Whether there has been a failure of consideration which has relieved defendant from the obligation to pay plaintiff the $10,000 due under the 1940 parol contract found by the jury to have been entered into between the parties.

(5) Whether the trial court committed prejudicial error in its rulings on evidence and its instructions to the jury which would entitle the defendant to a new trial.

Substantially the same testimony and evidence was adduced in behalf of plaintiff on the two issues submitted to the jury in the special verdict on the second trial as at the first trial. In our opinion on the first appeal we held that there was suf-

ficient credible evidence to support a jury finding that the parties had entered into the parol contract in 1940 alleged by the plaintiff, and that the subsequent written agreement of October 15, 1942, and the payment pursuant thereto by the defendant of $2,000, did not constitute an accord and satisfaction of plaintiff's claim for royalties based on the 1940 parol contract. Appellant has presented nothing on this appeal which has caused us to question the soundness of our holding on the first appeal as to this issue, and we adhere thereto. The plaintiff did give contradictory testimony in some respects but the question of his credibility lay solely within the province of the jury. While the complaint alleged that the parol contract upon which plaintiff bases his cause of action was entered into between the parties in October, 1940, and at the second trial plaintiff testified the same was entered into in the summer of 1940, we do not consider the same to constitute such a variance as to preclude plaintiff's right of recovery.

In our opinion on the first appeal this court stated (264 Wis. at p. 455) :

"Therefore, it is necessary that the cause be remanded for a new trial on the issues of the existence of the verbal contract providing for royalties as alleged by plaintiff, and as to whether the subsequent agreement of October 15, 1942, was intended by the parties as a release of all rights of plaintiff for royalties. If both of these questions at the new trial should be answered in favor of the plaintiff, then plaintiff would be entitled to judgment in the sum of $10,000 as prayed for in his complaint inasmuch as more than 5,000 pneumatic tools were marketed by defendant having identification tags attached bearing the patent-registration number covering plaintiff's invention."

The mandate which followed the above-quoted statement remanded the cause for a new trial "consistent with this opinion."

The learned trial court construed our mandate on the former appeal as not remanding the cause for a new trial on all issues but only as to the two issues stated in the above-quoted extract from our opinion. Counsel for appellant, on the other hand, maintained throughout the second trial that such new trial was not to be so restricted, but was open to all issues litigated, or which might have been litigated, at the first trial. Not only was it our intention by our opinion and mandate on the former appeal to so limit the issues to be tried on the second trial, as interpreted by the trial court, but we deem the words used by us in phrasing such intention to have been unambiguous and not open to the construction argued for by appellant's counsel.

Furthermore, defendant on the first appeal moved for a rehearing and filed a brief in support thereof, which brief raised no issue with respect to the question of whether an unlimited new trial, or one restricted to limited issues, had been directed by our mandate. If defendant had considered that there was any ambiguity in the opinion and mandate on this point, that was the proper time to raise the point, and not before the trial court during the course of the second trial.

On this appeal, defendant attempts to raise the issues of the statute of frauds and the statute of limitations. However, we do not feel called upon to consider the arguments advanced on these points because the same are without the restricted issues to which the second trial was confined by our mandate.

During the course of the second trial, defendant moved for leave to file an amended answer setting up additional defenses not contained in the original answer. One of such defenses was that defendant, at the time of entering into the alleged parol agreement of 1940 for the payment of royalties, already possessed shop rights in plaintiff's invention, so that consideration was utterly lacking to support defendant's promise to pay royalties. Because this court, by its

mandate on the first appeal, had restricted the issues to be litigated at the second trial, the trial court properly denied defendant's motion for leave to file such amended answer. However, lacking such basis for denying the motion, it would not have been an abuse of discretion for the trial court to have denied the same upon the ground of it not having been timely made.

Counsel for appellant has requested us to reconsider the determination we made on the first appeal whereby we held that the defendant, by its act of attaching tags to 6,225 tools manufactured by it, which tags bore the patent-registration number of plaintiff's invention, was estopped thereby to deny that the tools bearing such tags embodied plaintiff's invention. The brief filed by defendant with this court in support of its motion for rehearing on the first appeal was addressed solely to such holding of estoppel. After this court denied such motion for rehearing, defendant petitioned to the United States supreme court for certiorari, which petition was denied February 8, 1954, *Milwaukee Electric Tool Corp. v. Johann* (1954), 347 U. S. 913, 74 Sup. Ct. 477, 98 L. Ed. 1069. With such full consideration having already been accorded this issue, we might quite appropriately hold that our former determination on this issue was "the law of the case." However, as pointed out in *McGovern v. Eckhart* (1929), 200 Wis. 64, 77, 227 N. W. 300, this court does not deem itself bound to so strictly adhere to the court-made rule of "law of the case" as to preclude us from correcting a manifest error.

The result of further research into such issue of estoppel not only has failed to cause us to question the correctness of our original determination thereon, but has strengthened us in the conviction that the same was correctly made. For example, Ellis, Patent Assignments and Licenses (2d ed.), p. 608, sec. 568, states:

"Royalties are payable on articles outside of the scope of the patent claims if licensee, in making and selling the same, holds himself out as operating under the patent. . . .

"The usual way of proving that the licensee has claimed the protection of the patent is by showing that he marked the articles he sold with the number of the license patent."

The United States district court for the Western district of New York in *Lathrop v. Rice & Adams Corp.* (1936), 17 Fed. Supp. 622, 626, relied on the fact that the defendant licensee had used name plates on all machines manufactured and sold by it, on which were listed the plaintiff's patents, as one of the grounds for holding that the defendant was estopped to deny that the machines contained the patented improvements of the plaintiff.

It is the position of defendant that there was a failure of consideration with respect to its verbal covenant to pay a royalty for use of the plaintiff's invention of $2 per unit, subject to the limitation that the maximum royalty so payable should not exceed $10,000, because plaintiff's invention proved to be worthless inasmuch as it infringed on the Stull patent owned by the Chicago Pneumatic Company. In considering such contention it is first necessary to briefly review certain facts.

On December 6, 1939, Johann assigned in writing his invention to the defendant, and defendant, as such assignee, immediately proceeded to file an application for letters patent with the United States patent office. Such assignment of invention and filing of the application for letters patent preceded the making of the alleged verbal agreement for payment of royalties in the summer of 1940. Plaintiff had demonstrated his invention at an auto show held in Chicago in November or December, 1939, and, while there, had been informed that the same was claimed to infringe the Stull patent. Plaintiff, upon returning to Milwaukee, told Siebert, the president and principal stockholder of defendant, about the claimed infringement. Thus Siebert possessed as much

information as did plaintiff about the claimed infringement at the time of entering into the verbal agreement for payment of royalties in the summer of 1940. The United States patent office issued a letters patent to defendant, as plaintiff's assignee, for plaintiff's invention under date of October 28, 1941. As stated in our opinion on the first appeal, it was between August 1, 1945, and December 31, 1948, that defendant manufactured and sold the 6,225 tools which had attached thereto identification tags bearing the registration number of said patent issued upon plaintiff's invention.

Defendant's answer did not plead failure of consideration as an affirmative defense, and the majority rule is that partial or total failure of consideration, and the facts constituting such failure, must be so pleaded. 17 C. J. S., Contracts, p. 1192, sec. 556. Not having been so pleaded, such defense was without the issues required to be litigated on the second trial as restricted by the mandate of this court rendered on the first appeal.

Even if the defendant had not been so precluded from raising the issue of failure of consideration at the second trial, we consider that it could not have prevailed on such issue. It entered into the 1940 verbal agreement knowing at least that there was some question as to whether plaintiff's invention infringed the Stull patent. Nevertheless, defendant agreed to pay up to $10,000 in royalties if it manufactured and sold tools embodying such invention, it being optional with defendant whether or not it made any use of the same. After the patent was issued upon plaintiff's invention, it manufactured and sold over 6,000 tools to which it attached tags bearing the registration number of such patent. Because of so doing, we have held that defendant is estopped to deny that such tools embodied plaintiff's invention. Therefore, the defendant has had the benefit of its bargain and the $10,000 is due plaintiff under the verbal royalty agreement.

We consider that the case of *Stentor Electric Mfg. Co. v. Klaxon Co.* (3d Cir. 1940), 115 Fed. (2d) 268, is particu-

larly in point on this issue of failure of consideration. In that case the defendant purchased certain patents from the plaintiff, and, in addition to paying plaintiff a substantial sum at the time of making the contract of purchase, defendant promised to pay plaintiff a certain percentage of defendant's net profits realized from the sale of articles manufactured and sold under such patents. Plaintiff sued for breach of contract and defendant interposed the defense that the patents were commercially valueless and that the articles manufactured by it did not embody the invention of such patents. As in the instant case, the defendant also maintained that its relationship to the plaintiff was not that of licensee but rather of assignee, the contemplated future royalty payments being part of the purchase price for the assignment. Nevertheless, the defendant marked the articles it manufactured with the words "patented" and "Stentor." The court, in its opinion, stated (115 Fed. (2d) at p. 273) :

"It is not necessary for the determination of this case to decide whether the defendant was an assignee or a licensee. There was no failure of consideration. The defendant got exactly the monopoly for which it bargained. It carried on its business under these patents throughout the term and accepted such benefits thereunder as it thought desirable to reap. Although at times the defendant questioned whether some of the articles it manufactured came within the scope of the patents it never raised the question of their validity. Having accepted all the benefits which the contract provided should accrue to it the defendant may not now excuse its failure to perform by alleging it did not receive what it bargained for. The terms of the contract gave the sole right to manufacture the articles under the patent to the defendant. It enjoyed the monopoly it bargained for and there was no failure of consideration."

The instant case is readily distinguishable from the type of case where a party purchases an invention or patent, part or all of the purchase price being payable in future royalties,

believing it has some merit, and thereafter he discovers that such is not the case because the invention or patent has no value because it infringes another patent, and, when sued for such royalties, defends on the ground of failure of consideration. Here the defendant agreed to pay the plaintiff royalties although fully apprised of the claim of infringement of the Stull patent. Nevertheless, defendant made use of the patent covering plaintiff's invention by placing metal tags bearing the registration number of such patent on a large quantity of tools manufactured and sold by it.

We now turn to the contention advanced by counsel for the defendant that the trial court committed prejudicial error in its rulings on evidence and the manner in which it charged the jury, thereby entitling defendant to a new trial. Defendant's brief contains numerous assignments of error in support of such contention.

Plaintiff testified on direct examination as to the parts he remembered of a conversation he had with Siebert in 1942, preceding the execution of the written agreement dated October 15, 1942, which defendant contends constituted a complete settlement of all claims for royalties that plaintiff had against defendant, past, present, and future. Defendant's counsel thereafter sought by cross-examination of plaintiff to prove that in such conversation the plaintiff had called Siebert "a liar, a crook, a thief, a bastard," and made an offer of proof to such effect. The trial court on its own motion denied defendant's counsel the right to put a question to plaintiff to elicit the facts stated in such offer of proof on the ground "that it would only tend to inflame the minds of the jury." Counsel complains that such ruling was error. We fully approve of the ruling and the reason advanced for the same. The rejected evidence had no probative value on the issues of the case, and its admission might have tended to prejudice the jury against the plaintiff.

Defendant's counsel sought to interrogate plaintiff as to whether he had ever made a demand upon the defendant for the $10,000 royalties before instituting suit for the same. The trial court sustained the objection to such line of questioning on the ground that it was immaterial to the limited issues to be retried at the second trial. We consider that plaintiff's failure to have made such demand was material on the issue of whether the October 15, 1942, agreement was a complete release by plaintiff of all claims for royalty, and, therefore, the ruling was erroneous. However, such error was not prejudicial because in earlier testimony at such second trial plaintiff had admitted that he had made no such demand. Therefore, the excluded testimony was already in the record.

On January 21 and 22, 1948, plaintiff's testimony was taken in a discovery examination at Milwaukee for use in the action of Milwaukee Electric Tool Corporation v. Walray Manufacturing Company pending in a federal court in Chicago. Defendant's counsel at the instant trial sought to cross-examine the plaintiff as to a statement the latter made in such testimony given by him in such federal discovery examination, and made an offer of proof to the effect that plaintiff had therein stated "that he had settled with the Milwaukee Electric Tool Corporation; that he was all through with the corporation; that it was water over the dam, and that they were still doing business together." The attorney for plaintiff objected on the ground that defendant's counsel could make use of such prior testimony only by way of impeachment after first asking plaintiff whether he had ever made such a statement. The trial court sustained the objection and defendant's counsel then asked plaintiff if he had ever made the statement that he had settled with the defendant. Plaintiff answered that he had and that it occurred at such prior examination in Milwaukee before a court commissioner. After securing such admission, counsel for the defendant

abandoned the subject and made no further request of the court to read into the record any excerpt of plaintiff's testimony given at such discovery examination. Complaint is now made that the trial court erroneously excluded the prior testimony of plaintiff as recited in the offer of proof. We find no merit to such contention.

Defendant's counsel offered in evidence a letter dated September 10, 1942, written by Mr. Lieber, defendant's patent attorney, to defendant, to which offer the trial court sustained the objection of plaintiff's counsel that it was without the scope of the issues of the trial and self-serving. In such letter, Lieber advised against the defendant agreeing to pay a royalty to plaintiff as to the Lieber-Beckwith hammer "as such payment would imply that the Johann patent actually has claims covering the present hammer," and recommended instead that Johann be paid $2,000 for special service "in the development of these portable fender hammers." Defendant's counsel contends that it was because of this advice that the October 15, 1942, agreement provided for the payment of $2,000 to plaintiff "in full settlement for special services" rendered by plaintiff, and, therefore, it was material on the issue of whether a full settlement had been made with plaintiff with respect to his payment for royalties. (A copy of such agreement is set forth verbatim in our former opinion on the first appeal. See 264 Wis. at p. 453.) There is no claim made that such letter was shown to plaintiff or that in any conversation taking place between plaintiff and an officer of defendant such letter was referred to. We, therefore, hold that the objection that the letter was self-serving was properly sustained by the trial court.

Plaintiff's counsel, in alleging the verbal 1940 parol contract wherein defendant agreed to pay royalties to plaintiff, stated that such contract was made by defendant "for a valuable consideration." In cross-examining plaintiff, defendant's counsel asked plaintiff the following question:

"What was the valuable consideration, Mr. Johann, which you stated in your complaint?" The attorney for plaintiff objected to the question as calling for a conclusion and invading the province of the court and jury, which objection was sustained. Defendant contends that such ruling constituted error. We deem the ruling to have been proper. In any event, it was not prejudicial because it is a conceded fact in the case that Johann did assign over his invention to the defendant in order that defendant might procure the issuance of a patent in defendant's name as assignee, which assignment constituted the consideration for defendant's promise to pay royalties.

Error is claimed because of the inclusion by the trial court of the following statement in the instructions to the jury:

"In the consideration of the evidence in this case, in your determination of your answer to this question [question No. 1], you are instructed that you are not to consider any evidence concerning whether or not the Johann tool infringed upon any existing patents. This is not an infringement case and infringement as such is not an issue in this action."

This assignment of error assumes that defendant was correct in claiming that failure of consideration was at issue in the case. In view of that which has heretofore been stated in this opinion on such issue of failure of consideration, it was entirely proper for the trial court to instruct the jury that infringment was not an issue in the action.

Error is assigned because of the refusal of the trial court to give the following instruction requested by defendant's counsel:

"You are instructed that in determining whether there was a meeting of the minds between Mr. Siebert and Mr. Johann which was necessary to constitute a contract as I have defined that term to you, you are at liberty to take into consideration the undisputed fact that no demand was made upon Mr. Sie-

bert or the Milwaukee Electric Tool Corporation for any royalty after the signing of the agreement between Mr. Johann and Milwaukee Electric Tool Corporation on the 15th day of October, 1942."

Defendant's brief asserts that such requested instruction had reference to the second question of the special verdict relating to the alleged accord and satisfaction, and that it was error for the trial court to have refused to instruct the jury that they might consider the failure of plaintiff to have made any demand for royalties, after the signing of the October 15, 1942, agreement, in answering such question. We do not so interpret the requested instruction but consider that it related to question One of the special verdict rather than question Two. We are strengthened in this view by the fact that the requested instruction immediately preceding it related to question One and not question Two. Furthermore, Siebert testified that he had nothing to do with the execution of the October 15, 1942, agreement and did not approve of it, but that the same was consummated by Lange, secretary of the defendant corporation. Inasmuch as the requested instruction, is worded to refer to question One and not question Two, the trial court's refusal to so instruct was proper.

After the conversation had taken place between Siebert and plaintiff in the summer of 1940, which resulted in the verbal contract for payment of royalties found by the jury to have been made in answer to question One of the special verdict, Siebert had a written agreement drafted and submitted the same for signature to plaintiff. While the provision for payment of royalties was identical with the alleged parol contract, plaintiff testified that he objected to an additional paragraph being inserted in the agreement which had not been agreed to in the prior conversation and for that reason refused to sign such offered written agreement. The testimony of Siebert, on the other hand, tended to establish that the preceding conversation was only in the nature of

preliminary negotiations leading up to the execution of the written agreement.

Because of this conflict in testimony, the trial court included the following paragraph in its charge to the jury:

"An oral agreement which is complete in itself is binding upon the parties to such an agreement even though it is anticipated that a written agreement embodying its terms would afterwards be signed, provided the parties to such oral agreement so intended. You are further instructed that where during the preliminary negotiations, it is understood that one of the parties to the agreement is to prepare and to present to the other party a formal written agreement to evidence the contemplated contract, no binding contract is entered into unless the written agreement was actually prepared, presented, and signed by both parties."

The last sentence of the afore-quoted paragraph was given pursuant to written request of defendant's counsel. Defendant's brief erroneously contends that the trial court refused to give such requested instruction, when, in fact, it was given word for word as requested. The entire instruction on the question, of whether the conversation between plaintiff and Siebert in the summer of 1940 constituted an oral agreement or whether it was merely preliminary negotiations looking forward to the execution of a written contract, was entirely proper. Restatement, 1 Contracts, p. 33, sec. 26; Anno. 122 A. L. R. 1217; *Jungdorf v. Little Rice* (1914), 156 Wis. 466, 470, 145 N. W. 1092; and *Milwaukee Medical College v. Marquette University* (1932), 208 Wis. 168, 170, 242 N. W. 494.

Plaintiff advanced as the reason why he did not sign the written agreement, which Siebert had submitted for his signature shortly after the making of the verbal contract in the summer of 1940, the fact that he objected to a paragraph therein which he interpreted as prohibiting him from selling yokes or frames to parties other than defendant. Defendant's

counsel requested the court to include in the charge a requested instruction to the effect that plaintiff had wrongfully interpreted such paragraph, and defendant assigns as error the failure to give such paragraph. We consider that whether or not plaintiff correctly interpreted such paragraph in the proposed written agreement to be entirely immaterial and foreign to the issues before the jury, and, therefore, the trial court properly refused to give such requested instruction.

On the final page of defendant's brief under the heading "Conclusion" appears the following statement:

"The trial court required the defendant in the absence of the jury time after time to make an offer of proof principally by way of cross-examination of Mr. Johann. This practice disrupted the plans of counsel for the defendant and prevented counsel for the defendant from presenting the case to the jury in a logical, orderly, and effective manner."

The numerous and voluminous offers of proof in the record in this case were entirely voluntary on the part of defendant's counsel and not due to any requirement of the trial court. The trial court merely pursued the proper practice of insisting that offers of proof, which contained matter which the court had ruled was inadmissible, be made in the absence of the jury.

In conclusion, it is our considered judgment that there was no prejudicial error committed on the part of the trial court in the trial of this case which extended over a period of nearly two weeks. Throughout such lengthy trial, the trial court was required to make an unusually large number of rulings on admissibility of evidence, and, where such rulings were adverse, to pass upon lengthy offers of proof. We consider it a tribute to the ability of the learned trial judge that the record in this case is free of prejudicial error.

*By the Court.*—Judgment affirmed.