78 Wis.2d 451 (1977)
255 N.W.2d 293
METROPOLITAN SEWERAGE COMMISSION OF COUNTY OF MILWAUKEE, Cross-Appellant and Respondent,
v.
R. W. CONSTRUCTION, INC., Appellant: FIDELITY & DEPOSIT COMPANY OF MARYLAND, Respondent.
No. 76-221.
Supreme Court of Wisconsin.
Argued March 29, 1977.
Decided June 14, 1977.
*452 For the appellant there were briefs by Elwin J. Zarwell, Peter W. Bunde, Ronald L. Wallenfang and Quarles & Brady, attorneys, and Joseph Swietlik and Laikin, Swietlik & Laikin, of counsel, and oral argument by Mr. Zarwell, all of Milwaukee.
For the cross-appellant and respondent there were briefs by Ewald L. Moerke, Jr., Robert Arthur Melin, *453 and Schroeder, Gedlen, Riester & Moerke, and oral argument by Mr. Melin, all of Milwaukee.
HEFFERNAN, J.
The question on this appeal is whether the trial judge on remand for determination of damages properly followed the mandate of this court in Metropolitan Sewerage Commission of County of Milwaukee v. R. W. Construction, Inc., 72 Wis.2d 365, 241 N.W.2d 371 (1976), and made a reasonable assessment of damages on the basis of a "jury type" verdict. We conclude that he did and affirm the judgment.
This is the second appeal involving this case. In the original trial, the trial judge found that R. W. Construction, Inc., in constructing a section of the Milwaukee sewerage system under bid contract, did not encounter subsurface conditions differing materially from those indicated in the bid documents. Thus, he concluded, it was not entitled to an equitable adjustment in its original contract price. Instead, the court held that Metropolitan Sewerage Commission of the County of Milwaukee, plaintiff, was entitled to a judgment of approximately $5,500,000 for breach of contract.
On appeal this court, in Metropolitan Sewerage Commission of County of Milwaukee (hereinafter M.S.C. 1), supra, found changed conditions as a matter of law and reversed. We remanded for determination of the amount of equitable adjustment (damages) to which R. W. Construction, Inc. (hereinafter R.W.) was entitled. Metropolitan Sewerage Commission's motion for rehearing on grounds that this court had applied incorrect engineering principles was denied.
On the remand, the trial judge rendered a "jury type" verdict for R.W. in the amount of $1,500,000. R.W. has now appealed, claiming the amount should have been nearly $3,000,000. Metropolitan Sewerage Commission (hereinafter M.S.C.) cross-appealed, claiming the amount should have been zero.
*454 The background to this litigation is set forth extensively in the opinion of this court dated May 4, 1976. To briefly recapitulate the facts however, M.S.C. and R.W. on May 6, 1969, entered into a $3,900,000 contract for the construction of a sewer to be located one hundred feet below the surface of the ground. After commencing work, R.W. encountered artesian water, which resulted in extensive flooding. This required unanticipated and expensive dewatering procedures. R.W. attempted to control the flooding by the use of compressed air. Compressed air from the tunnel escaped from abandoned but unplugged wells and carried carbon dioxide into neighboring homes. Because of the health hazard, the West Allis Health Commissioner on March 3, 1971, ordered the work stopped on the tunnel. R.W.'s efforts to secure an equitable adjustment to compensate for the unforeseen costs were refused by M.S.C. R.W., therefore, ceased all work and depressurized and blocked the tunnel. M.S.C. terminated the contract in June of 1971 and sued for a breach of contract.
M.S.C. was awarded damages in the sum of approximately $5,500,000.
R.W.'s counterclaim for equitable adjustment was dismissed. R.W. appealed from the judgment, and R.W. and Fidelity and Deposit Company, its surety, appealed dismissal of a counterclaim. M.S.C. cross-appealed, claiming judgment should be entered against Fidelity in the same amount as against R.W.
On May 4, 1976, this court decided that R.W., as a matter of law, had encountered changed conditions and was entitled to an equitable adjustment. We said:
"In this case R.W. argues that its damages are readily determinable, and sets forth a summary of damages amounting to nearly 3 million dollars. However, this summary does not take account of the fact that the contractor must absorb those costs, if any, due to its inefficiency *455 in planning and performance. Under these circumstances our holding here is limited to concluding that the MSC is liable for an equitable adjustment under the changed-conditions clause, and therefore we remand the case to the trial court for a hearing to determine the amount of the equitable adjustment to which R.W. is entitled. In so doing, we follow the same general procedure followed by the 7th Circuit in the Fattore Cases, which were diversity actions applying Wisconsin law in which the MSC was a party." (M.S.C. 1, at 383-84)
This court remanded the case to the trial court for entry of judgment and assessment of damages against M.S.C.
On July 15, 1976, in the trial court, R.W. filed notice of motion and motion for entry of judgment in its favor and for entry of findings of fact as follows:

Direct job costs $1,473,031.05
Equipment costs 375,827.96
Office overhead costs 104,732.51
 _________________
Less payment to R.W. by M.S.C. 478,957.23
NET LOSS 1,474,634.29
Bid profit without changed condition 348,555.00
10% profit on equitable adjustment 143,813.15
10% profit on equitable adjustment after
 contract termination 624,597.44
 _____________
TOTAL DAMAGES $2,591,599.88
Interest at $355.05 daily from Feb. 8,
 1974, to date of judgment at 7%

As a conclusion of law, R.W. asked that judgment for $2,953,613.28 be entered, reflecting the above amount plus interest. These proposed findings are derived from R.W.'s Exhibit A.[1]
M.S.C. moved for reopening of the trial to take testimony on damages. After hearing and in a decision rendered *456 August 24, 1976, the trial judge found both motions "inappropriate" and denied them.
In his decision, the trial judge interpreted M.S.C. 1 to mandate only a hearing on damages. Judge Decker, the trial judge, wrote:
"The Supreme Court neither intended to deny to the trial court the right to reopen the case for further testimony nor to compel the reopening of the case. As this court views the mandate, the trial court was to review the record with respect to the equitable adjustment (damages) to be awarded to R.W., and if it felt that it could do so on the record, it was to proceed to an adjudication on the merits. In addition, it was to afford a hearing to the parties to the action to present their views with respect to damages, including those already presented at the close of the trial. If the parties were of the opinion that additional testimony was necessary to enable the trial court to proceed to judgment, they were to be afforded this hearing in order to present that testimony, or at least to detail the need therefor, so that it could be produced at a time mutually convenient to counsel and court."
The judge found the record adequate for damage assessment and denied the admission of further evidence.
M.S.C. had asserted that additional expert testimony was necessary.
The judge then rendered a "jury type" verdict:
"... this court fixes the equitable adjustment to which R.W. is entitled at $1.5 million dollars. Included in said sum is direct job costs, overhead, allocable equipment costs, bid profits, profit on the equitable adjustment for work completed by R.W., profit on the extra cost on account of changed conditions, profit on the equitable adjustment for the work uncompleted by R.W. and prejudgment interest to the date of August 31, 1976."
The court determined that the "jury type" verdict was more reliable than a "reasonable cost" determination, and that $1,500,000 was a fair and reasonable approximation *457 of damages, based on the court's review of "its trial notes and the records at great length."
The factors mentioned by the court, compared with R.W.'s Exhibit A, make clear that the court made its assessment based on the categories claimed by R.W., although it reduced the amounts, pursuant to the Supreme Court directive in M.S.C. 1that costs due to any inefficiencies in R.W.'s pre-bid planning and post-award performance were to be deducted from the claimed equitable adjustment.
The trial court entered the following findings of fact and conclusions of law:
"FINDINGS OF FACT
"These findings are in addition to Findings 1-193 previously made, which are reaffirmed to the extent consistent with the Supreme Court decision.
"A. The record is adequate to arrive at a determination of damages. (August 24, 1976, Decision, page 3).
"B. This court fixes the equitable adjustment to which R.W. is entitled at $1.5 million dollars. Included in said sum is direct job costs, overhead, allocable equipment costs, bid profit, profit on the equitable adjustment for work completed by R.W., profit on the extra cost on account of changed conditions, profit on the equitable adjustment for the work uncompleted by R.W. and prejudgment interest to the date of August 31, 1976. $1.5 million dollars is a fair and reasonable approximation of the damages sustained and therefore, the equitable adjustment to which R.W. is entitled. (August 24, 1976 Decision, page 5).
"C. This court is mindful of the principles of damage set forth specifically by the Supreme Court at pp. 383-385 of its opinion. It determines the more reliable method of computing damages is the jury-type verdict referred to at page 384 of the opinion. It determines that 1.5 million dollars is a fair and reasonable approximation of the damages sustained, and therefore the equitable adjustment to which R.W. is entitled.
"CONCLUSIONS OF LAW
"IT IS ORDERED:
"That the defendant R.W. Construction, Inc. is entitled to judgment in favor of Defendant, R.W. Construction, *458 Inc., and against the Plaintiff, Metropolitan Sewerage Commission in the amount of $1,500,000.00 plus the costs and disbursements to be taxed by the Court herein."
The court entered judgment for R.W. on September 3, 1976. Earlier the court held a hearing on the proposed findings of fact and conclusions of law.
M.S.C. orally moved for reconsideration of the decision. In a supporting affidavit, M.S.C. alleged that two experts, Richard F. Brissette for D'Appolonia Consulting Engineers, and Professor David K. Todd, a dewatering expert, were prepared to testify about costs of dewatering under artesian, as opposed to static, water condition, and that each was preparing a formal report to be ready in about three weeks. On September 30, 1976, M.S.C. also moved for an order vacating the judgment of September 3, 1976.
Hearing was held on October 18, 1976. On that date the court found, after reading the Brissette and Todd reports, each of which concluded that dewatering was actually cheaper under artesian than under static water conditions, that the offer of additional testimony was an attempt, after the fact, to contradict what the Supreme Court held in M.S.C. 1. The trial judge concluded that the reports were not a proper part of the record. In addition, the court stated:
"Only in the conclusion to its brief does it [M.S.C.] acknowledge the third proposition that logically flows from its postulations [that there is no damage sum due], and that is that since there are no damages, that flow from the changed conditions, that in fact there weren't any changed conditions as the Supreme Court found them. Now that economic compromise the plaintiff is privileged to make, but when it is proposed to me, it requires an intellectual compromise that I will not make because I can not by indirection reverse the Supreme Court, and that is in effect the whole thrust of the motion for reconsideration."
The court denied M.S.C.'s motion for reconsideration of the decision and vacation of the judgment. The court *459 affirmed its prior judgment. R.W. appealed from the judgment, and M.S.C. cross-appealed.
[1]
An initial question, and the one crucial to the resolution of this appeal, is the meaning of this court's mandate for remand in M.S.C. 1. It should be noted at the outset that, were there any substantial questions in that respect, it behooved the parties to raise them by a timely motion for rehearing, rather than to relitigate the original case now. Johann v. Milwaukee Electric Tool Corp., 270 Wis. 573, 579, 72 N.W.2d 401 (1955).
M.S.C. interprets the opinion to require the trial court to hear new evidence on damages if it concludes, which M.S.C. contends it must on the record, that evidence in the record is insufficient. R.W. reads the opinion to require deductions from the damage amount in its Exhibit A assessment only if R.W. was deficient in planning or performance. R.W. argues it was not.
In M.S.C. 1, this court stated that the trial judge's conclusion of no changed conditions was a question of law, to which this court owes no deference. However, his fact findings in respect to conditions actually encountered and in respect to R.W.'s bidding and performance were not upset.
The Supreme Court also found that the re-bids, after R.W.'s alleged breach, confirmed the finding of changed conditions. This court based that conclusion on two facts: (1) That Lazynski, who had originally subcontracted from R.W. to construct a small portion of the tunnel, had originally bid $38,000, whereas its completed work had cost M.S.C. $86,000; and (2) that completion of Contract 222-A (the substitute contract), although involving only 85 percent of the original work, was bid at $8,200,000, more than twice R.W.'s original bid. This court also concluded that these facts were relevant to R.W.'s pre-bid planning and post-award performance.
*460 Therefore, although R.W. was entitled to an equitable adjustment, the trial court's findings as to R.W.'s deficient pre-bid planning and post-award performance were to stand, because they were not against the great weight and clear preponderance of the evidence. However, said this court, such deficiencies went to damage assessment, not to liability. This court rejected R.W.'s damage assessment in Exhibit A, before us on the original appeal and now included in the brief on the present appeal.
We said in M.S.C. 1:
"[T]his summary [exhibit A] does not take account of the fact that the contractor must absorb those costs, if any, due to its inefficiency in planning and performance. Under these circumstances our holding here is limited to concluding that the MSC is liable for an equitable adjustment under the changed-conditions clause, and therefore we remand the case to the trial court for a hearing to determine the amount of the equitable adjustment to which R.W. is entitled." (at 383-84)
This court did not, however, prohibit the trial court from accepting R.W.'s damage assessment in Exhibit A. Rather, it ordered that the court decide what, if any, deductions were to be made therefrom due to R.W.'s deficiencies in planning and performance.
This court set out the damage concept to be used by the trial court:
"The amount of equitable adjustment to which a contractor is entitled is the difference between what it reasonably cost to do the work under the actually encountered conditions and what it would have cost if the materially different conditions had not been encountered." (at 384)
We then set out a specific damage methodology based on the "reasonable cost" concept:
"Thus, in the case at bar, although the contract drawings do not indicate a large artesian aquifer, they do *461 indicate a substantial amount of ground water. If the trial court determines that R.W. failed to properly take account of these indicated conditions in its planning and bidding, then the amount of the equitable adjustment cannot be based upon R.W.'s original bid estimate. Instead, a higher amount, corresponding to the cost of controlling the large amount of static ground water indicated by the contract documents, must be employed in estimating damages. Similarly, in regard to R.W.'s ineffective postaward performance, if the trial court determines that R.W.'s methods unreasonably inflated its out-of-pocket expenses or that some other methods would have been less expensive, then a lower figure must be employed in estimating reasonable out-of-pocket expenses." (at 384-85)
In acknowledgment that the trial court might be unable to make a precise mathematical computation, this court authorized an alternative to the "reasonable cost" method. We said:
"[I]f the trial court reasonably determines that there is no more reliable method of computing damages, it may resort to a jury-type verdict which is a fair and reasonable approximation of these damages." (at 384)
We remanded, not for a new trial on damages, but "for a hearing to determine the amount of the equitable adjustment to which R.W. is entitled." (at 384)
We permitted the trial court the following alternatives: It could choose either to reopen for further evidence or not to do so; it could grant the entire damage sum in Exhibit A to R.W. if it found R.W. was not deficient either in pre-bid planning or post-award performance. We mandated that it use the "reasonable cost" method if a reliable basis for assessing damages appeared either in the record of trial or the record as supplemented in the discretion of the trial judge. We also stated that, if the trial court found there was no more reliable method of assessing damages, it might resort to a "jury type" verdict, although, if it did so, it must also make deductions *462 for R.W.'s deficient planning and performance. The opinion did not permit the trial court to use the "total cost" method of assessment.
[2]
The order of preference for method of damage assessment in equitable-adjustment or changed-condition cases is: (1) The "reasonable cost" method, (2) the "jury type" verdict method, and (3) the "total cost" method. In M.S.C. 1, this court favored the first but permitted the second, "if the trial court reasonably determines that there is no more reliable method of computing damages...." (at 384)
[3]
The preferred "reasonable cost" method was described by the court in M.S.C. 1 as:
"[T]he difference between what it reasonably cost to do the work under the actually encountered conditions and what it would have cost if the materially different conditions had not been encountered." (at 384)
See also, Fattore Co., Inc. v. Metropolitan Sewerage Commission of County of Milwaukee, 454 F.2d 537 (7th Cir. 1971); Paul Hardeman, Inc. v. United States, 186 Ct. Cl. 743, 406 F.2d 1357 (1969); Kaiser Industries Corp. v. United States, 169 Ct. Cl. 310, 336, 340 F.2d 322 (1965).
This method permits a contractor to only recover for reasonable excess costs, i.e., those not attributable to his own deficient bidding or performance.
[4]
The second method, the "jury type" verdict, is allowed where records are inadequate to assess specific damages, yet plaintiff has been injured by the changed conditions and liability is clear. In Specialty Assembling & Packing Co., Inc. v. United States, 174 Ct. Cl. 153, 184, 355 F.2d 554 (1966), the court said:
"[I]nability to determine the precise amount of the damages attributable to the Government's breach of contract *463 does not preclude the court from entering a judgment for the plaintiff. The ascertainment of damages is not an exact science. [citing case] Hence, it is not essential that the amount of damages be ascertainable with absolute exactness or mathematical precision. [citing cases] It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation. [citing case] In estimating damages, the Court of Claims occupies the position of a jury under like circumstances; and all that the litigants have any right to expect is the exercise of the court's best judgment upon the basis of the evidence provided by the parties. [citing case]"
This method has been found especially appropriate where the age of the case or state of the record makes it doubtful that further proceedings would produce a better foundation for an award. WRB Corporation v. United States, 183 Ct. Cl. 409, 425 (1968).
In Phillips Construction Co., Inc. v. United States, 184 Ct. Cl. 249, 394 F.2d 834 (1968), the court approved the use of a "jury type" verdict, because, it said:
"Under the facts at hand, we know of no logical approach by which we could step by step with demonstrable accuracy reach a precise figure.
"Our judgment is based upon our familiarity with the records in the two cases, our knowledge of legal precedents and the general experience we have gained in deciding from day to day matters arising out of construction as well as other types of contracts." (at 257-58)
In Fattore Co., Inc. v. Metropolitan Sewerage Commission of County of Milwaukee, 505 F.2d 1 (7th Cir. 1974), upon which the M.S.C. 1 remand was specifically modeled (M.S.C. 1, at 384), the Court of Appeals upheld a "jury type" verdict, noting the "inherently imprecise nature" of an equitable adjustment:
"`Jury verdicts' have always been supported if there was clear proof that the contractor was injured and there was no more reliable method for computing damages *464 provided that the evidence adduced was sufficient to enable a court or jury to make a fair and reasonable approximation....
"The record in this case is replete with evidence upon which a jury or court could fairly and reasonably determine the approximate amount of damages." (at 5)
The discredited "total cost" method of assessment, to which we gave no approval in M.S.C. 1, was employed in Great Lakes Dredge & Dock Co. v. United States, 119 Ct. Cl. 504, 96 F. Supp. 923 (1951), cert. denied, 342 U.S. 953. The court therein found plaintiff entitled to an equitable adjustment measured by the difference between a reasonable estimated bid amount and actual excess costs due to changed conditions. However, the doctrine was limited to situations where "... plaintiff's actual increased costs were necessary and reasonable" and "its estimate of costs was correct." (at 925) Since the court therein found that plaintiff had underestimated its bid, it computed the reasonable bid estimate by averaging the sum bid by four losing bidders and the government estimate.
In F. H. McGraw & Co. v. United States, 131 Ct. Cl. 501, 130 F. Supp. 394 (1955), the Court of Claims criticized this method, noting that:
"... among other things, it assumes plaintiff's costs were reasonable and that plaintiff was not responsible for any increases in cost, and because it assumes plaintiff's bid was accurately computed, which is not always the case, by any means." (at 511)
In J. D. Hedin Construction Co., Inc. v. United States, 171 Ct. Cl. 70, 347 F.2d 235 (1965), the court concluded that the "total cost" method was permissible only where no other method existed, plaintiff was clearly injured, and defendant was clearly liable.
In Boyajian v. United States, 191 Ct. Cl. 233, 423 F.2d 1231 (1970), however, the court found the "total cost" method unacceptable even where liability was clear.
*465 The record there was so deficient as to preclude any award. The court said:
"[The record] consists only of an accountant's schedule ... setting forth computations ... of plaintiff's total expenditures in performing the contract, and subtracting therefrom the total contract receipts, thus arriving at a total `loss' figure, for which plaintiff demands recoupment." (at 240)
In other words, as stated in WRB Corporation v. United States, supra, the "total cost" method may only be used where:
"(1) [T]he nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses." (at 426)
These "equitable adjustment" methods have been recapitulated, because the basic arguments made by both parties rely on them.
R.W. argues that its Exhibit A is based, as this court mandated, on the "reasonable cost" method, contending that no deductions were made for its deficiencies in bidding or performance, because there were none. However, M.S.C. contends that R.W., in fact, used the impermissible "total cost" method. We agree with M.S.C. in this respect.
M.S.C. also argues that the trial court improperly applied the "jury type" verdict, because there was a "more reliable" "reasonable cost" method of computation which would have resulted in a finding of zero damages had the court admitted the supplementary reports of its dewatering experts.
The dispositive issue is whether the trial court could have reasonably determined that no more reliable method of computing damages existed than the "jury type" verdict, and, if it could have, whether that "jury type" *466 verdict was a fair and reasonable approximation of these damages.
[5]
In the instant case we hold that the trial judge could have reasonably concluded that there was no more reliable method of computing damages than the "jury type" verdict and that the figure so ascertained was supported by the evidence and was a reasonable and fair approximation of the damages.
R.W. does not directly argue that a "jury type" verdict was improper, although that contention is implicit in its entire argument that its damage assessment, Exhibit A, is based on the "reasonable cost" method. M.S.C. directly argues that the trial court could not use the "jury type" verdict, consistent with the mandate of the court in M.S.C. 1, because a more reliable method, its "reasonable cost" computation of zero damages, was available to the court.
In respect to the zero damages urged by M.S.C., it is clear that its position is premised on proffered reports, not a part of the record, offered after the remand and properly excluded from evidence by the trial judge.
The question remains, however, whether the trial court could reasonably have concluded, as it was permitted to do by M.S.C. 1, that there was "no more reliable method of computing damages" (at 384) than the "jury type" verdict.
The record is voluminous. Liability and damages, both on the breach of contract claim and the equitable adjustment counterclaim, were tried extensively in the original proceedings and argued in this court on the first appeal and to the trial court on remand.
This court in M.S.C. 1, and the trial court on remand, accepted the damage categories in R.W.'s Exhibit A, although the trial court's award was in a reduced amount.
We, accordingly, examine the "reasonableness" of the trial court's decision that the "reasonable cost" method was not as "reliable" as the "jury type" verdict, in light *467 of the mathematical, accounting, and damage data available to it on remand in terms of categories in Exhibit A.
Item IA, Direct Job Costs, is based, according to Exhibit A, on Exhibits 13383-13385, which purport to be a balance sheet indicating all job expenses incurred by R.W. in connection with the "Tunnel Sewerage Com. S. 84th St." Total costs, less an amount paid to subcontractor Lazynski and superintendence costs, are $1,473,031.05. Item IB, Overhead at 7.11 percent, is based, according to Exhibit A, on Exhibit 3199 A and B, which appears to be other job costs allocated to Contract 222 for fiscal years ending March 31, 1968, 1969, and 1970. Exhibit 3199 A and B lists a total amount of $107,527, reduced in Exhibit A to $104,732.51. The relevance of figures for fiscal 1968, ending March 31 of that year, is puzzling, since the R.W.M.S.C. contract was not entered into until May of 1969. Any overhead assessment for fiscal 1968 or 1969, except as an estimate, was substantially irrelevant. Item IC, Allocable Equipment Costs, is based, according to Exhibit A, on Exhibit 20010, which is an "Equipment Rental Schedule for M-222" for 60 specific pieces of equipment, at a total cost of $389,522.84, reduced to $375,827.96 on Exhibit A.
Items IIA, B, and C involve profits. Item IIA, based upon Exhibit 20006 according to Exhibit A, purports to be a "Summary of Bid Estimate for Contract #222" and corresponds to the actual bid amount. Bid profit is not listed thereon, but in Exhibit A is listed at $348,555.00, approximately 10 percent of the bid amount.
Item IIB, profit on the equitable adjustment for work completed by R.W., is based on 10 percent profit on the total costs computed above, less cost of work without the changed conditions less 10 percent profit on that amount, $143,813.15. The cost of work without the changed conditions is computed on the basis of Exhibit 5414, which, in fact, is a schedule of the monthly estimate of costs by M.S.C., indicating the total amount paid to R.W. on the contract.
*468 Item IIC is profit on the equitable adjustment for work remaining and is computed on Lazynski's low bid on substitute Contract 222A, $9,649,791, less the amount of the R.W. bid on Contract 222 and work completed at unit rate at 10 percent profit, equaling $624,597.44.
Item IV, Prejudgment Interest, was computed to be $362,013.40.
It is apparent why the court found it could not make a reliable and specific computation of damages based on this record. This court mandated that the trial court reduce from Exhibit A amounts those costs attributable to R.W.'s planning and performance deficiencies, if any, even if it used the "jury type" verdict form. Although the exhibits discussed above indicate total expenses for the contract period, there seems no way (apart from accepting R.W.'s contention that all these costs were reasonable, because they acknowledge no deficiencies in its planning or performance) to find the costs attributable to R.W.'s inefficiencies and the total costs attributable to R.W.'s deficient conduct.
Because profit estimates were based in large measure on the cost figures in Item I, profit cannot be accurately computed unless total costs, less costs attributable to R.W.'s deficiencies, can be. Further, the trial court, in the original proceedings, had found deficiencies as a matter of fact, and this court upheld those findings in M.S.C. 1. It is clear that there are deductions the trial judge would be required, by his own supported findings, to make from the gross amount claimed in Exhibit A. However, he did not have sufficiently specific data to do so.
We conclude, therefore, that the trial court could reasonably have decided that there was no more reliable method than the "jury type" verdict.
[6]
The additional question presented is whether that "jury type" verdict for R.W. in the amount of $1,500,000 *469 was a fair and reasonable approximation of damages. We conclude that it was.
The trial judge had found as a matter of fact that R.W. had been deficient in planning for dewatering, in failing to take advice of experts once it encountered water problems, in using the wrong type of wells, and in installing an insufficient number of wells. This court, in M.S.C. 1, found these fact findings not against the great weight and clear preponderance of the evidence. On remand, it is thus apparent the trial court was required to reduce the gross amount of Exhibit A to a substantial degree. The nearly $1,500,000 reduction reflects an approximation of the loss due to R.W.'s own deficiencies. The trial court stated that:
"In arriving at this determination, this court has reviewed its trial notes and the records at great length since the Supreme Court's decision on May 4, 1976."
Because the principle of the "jury type" verdict is to permit recovery where liability is clear but precise data is not available, we find this deduction by the trial judge to reasonably approximate and measure R.W.'s own deficiencies.
In the words of the Court of Claims in Specialty Assembling & Packing Co. v. United States, 174 Ct. Cl. 153, 184, 355 F.2d 554 (1966):
"The ascertainment of damages is not an exact science. [citing case] Hence, it is not essential that the amount of damages be ascertainable with absolute exactness or mathematical precision. [citing cases] It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation. [citing case] In estimating damages, the Court of Claims occupies the position of a jury under like circumstances; and all that the litigants have any right to expect is the exercise of the court's best judgment upon the basis of the evidence provided by the parties. [citing case]"
By the Court.Judgment affirmed.

*470
EXHIBIT A
SUMMARY OF DAMAGES
 I. OUT OF POCKET LOSSES
 A. Direct Job Costs: (Ex. 13383-13385;
 A-Ap. 467-648) $1,473,031.05
 B. Overhead at 7.11% Average for
 years ended 3-31-68, '69 & '70 (Ex.
 3199 A&B) 104,732.51
 C. Allocable Equipment Costs Per
 AGCA Schedules: (Ex. 20010, A-AP
 .... Ex. 13379) Bennett v. U. S.,
 371 F.2d 859 (Ct. Cl. 1967) 375,827.96
 _____________
 D. Total: $1,953,591.52
 E. Less Previous Payments: (A-Ap. p.
 360; Ex. 5414) 478,957.23 $1,474,634.29
 _______________
 II. PROFIT
 A. Bid Profit: (A-Ap. 657; Ex. 20006)
 [Allowability as to matter of law
 established in U. S. v. Behan, 110
 U.S. 338 (1884); Spearin v. U. S.,
 248 U.S. 312 (1918)] 348,555.00

*471
 B. Profit on Equitable Adjustment for
 Work Completed by R. W. Construction,
 Inc. [Allowability as a matter
 of law established in Fattore v.
 M.S.C., 505 F.2d 1 (7th Cir. Wis.
 1974)]:
 1. Cost of Work through Changed
 Conditions (I.D. above): 1,953,591.52
 2. Less Cost of Work without
 Changed Conditions:
 a. Work Done at Unit Rate:
 (Ex. 5414) $572,733.35
 b. Less 10% Profit: [As the
 M.S.C. expert Weir pointed
 out (R. 2123-2127, 2131-2133,
 2138, 2151, 2154-2155),
 this calculation utilizing 10%
 of price is inconsistent with
 the calculation below the 10%
 over cost (the latter being
 utilized by the cases). The
 error is in the M.S.C.'s favor
 and since it is small (about
 $6,000), no adjustment is demanded
 here.] 57,273.34 515,460.01
 _____________ ____________

*472
 3. Extra Cost on Account of
 Changed Conditions: $1,438,131.51
 4. Profit at 10%: [10% rate of
 profit over cost, including overhead,
 established as a matter of
 law in Fehlhaber v. U. S., 151 F.
 Supp. 817 (Ct. Cl. 1957); Briscoe
 v. U. S., 442 F.2d 953 (Ct.
 Cl. 1972); S. N. Neilson Co., 141
 F.2d 793 (Ct. Cl. 1958)] 143,813.15*
* Allowance of a profit on the equitable adjustment paid Lazynski on the subcontract
 would increase this by some $5,000.
 C. Profit on Equitable Adjustment for
 Work Remaining [Allowability and
 rate established as a matter of law
 in Carchia v. U. S., 485 F.2d 622
 (Ct. Cl. 1973)]
 1. Low bid on Contract 222A for
 remaining work: A-Ap. 925;
 703-704) $9,649,791.00
 2. Less R. W. Construction Allocable
 Cost for Remaining Work

*473
 a. R. W. Contract: $3,976,550.00
 b. Less Work Completed at
 Unit Rates: 572,733.35 3,403,816.65
 _____________ _____________
 3. Difference: $6,245,974.35
 4. Profit at 10% of sales per
 Carchia: $ 624,597.44
III. TOTAL DAMAGES: $2,591,599.88
 =============
IV. PREJUDGMENT INTEREST
 A. Interest on Damages other than
 Profit on Equitable Adjustment for
 Work Remaining from 2/26/71
 Breach by M.S.C. to 10/26/71 Bid
 Opening on Contract 222A Damages: $2,591,599.88
 - 624,594.44
 _____________
 $1,967,005.44
 2/26/71 - 10/26/71 = 8 months =
 2/3 year;2/3 × 5% = .03333
 Interest = $1,967,005.44 × .03333 = $ 65,560.29

*474
 B. Interest on entire judgment from
 Bid Opening on Contract 222A, 10/26/71
 to 2/8/74 2 yrs.=10%=.1
 105 days
 _________=21/73 × .05=.01439
 365
 $2,591,599.88 × .11439 = 296,453.11 $ 362,013.40
 _____________ ___________
TOTAL DAMAGES & INTEREST $2,953,613.28
TO 2/8/74 = ==============
Daily Prejudgment Interest after 2/8/74
 1
____ × .05 = .000137
365
 $2,591,599.88 × .000137 = $355.05

NOTES
[1] Exhibit A is appended to this opinion.