**MORAN TOWING AND TRANSPORTATION CO., Inc., South American Towing Corp., and Moran Towing Corp., Libelants,**

v.

**UNITED STATES of America, Respondent.**

United States District Court
S. D. New York.
Oct. 14, 1960.

856

Burlingham, Hupper & Kennedy, New York City, for libelants. Eugene Underwood, H. Barton Williams, John S. Rogers, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for respondent. Benjamin H. Berman, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, New York City, Louis E. Greco, Atty., Admiralty & Shipping Section, Dept. of Justice, New York City, of counsel.

CASHIN, District Judge.

Two motions are herein considered. The first, made by respondent, is for an order, pursuant to 9 U.S.C. § 3, staying this suit. The second, made by libelants, is to overrule the exceptive allegations of respondent filed on April 27, 1960.

The libel alleges that libelant, Moran Towing and Transportation Co., Inc., and respondent contracted on June 21, 1957 for libelant to tow the 100-ton crane barge BD 6074 from Charleston, South Carolina, to a port in France. The contract contains the following provisions:

"Article 5. Fitting Out Tow.— The Government shall fit out and maintain the tow in a proper and sufficient manner in all respects and shall hold harmless the Contractor and the tug from any and all loss, damage or liability arising out of, or in any way contributed to by, the unseaworthiness of the tow, or by any deficiency in, or failure of, its machinery, equipment or the personnel on board."

"Article 6. Fitting Out Tug.— The Contractor shall fit out and maintain the tug for this towage service in a proper and sufficient manner in all respects and shall indemnify the Government and the tow against, and hold them harmless from, any and all loss, damage or liability arising out of, or in any way contributed to by, the unseaworthiness of the tug, or by and deficiency in, or failure of, its machinery, equipment or the personnel on board."

At Charleston, South Carolina, the tug Edmond J. Moran took respondent's barge in tow and on July 31, 1957 respondent paid Moran one-half of the contract price, $30,250. En route, about 180 miles from the designated port of St. Nazaire, France, the barge broke adrift. With the aid of the fishing trawler, Pierre et Laurent, the barge was resecured and was delivered to respondent's authorized representative on or about August 12, 1957. While the barge was adrift, and while it was being resecured, it sustained substantial damage to her hull and equipment. Because of this, respondent's contracting officer informed Moran that the remaining one-half of the contract price was being withheld pending determination of liability for the damage. After receiving certain requested information, the contracting officer, on January 10, 1958, paid the remaining one-half of the contract price without any deduction for the damage.

Libelants were then sued in France by the owner of the Pierre et Laurent for salvage assistance claimed to have been rendered and for damages claimed to have been sustained in rendering such assistance. A judgment for 34,234,065 francs, plus interest and costs, has been entered in the French Commercial Court of St. Nazaire and affirmed on appeal. The present action was then started to recover under Article 5 of the contract what libelants have had to pay to defend the French suit, and what they may have to pay pursuant to the French judgment.

The controversy centers around the responsibility for the crane barge BD 6074 breaking loose. The libel alleges that the respondent equipped the barge with two padeyes into each of which respondent fitted a shackle to which the bridles and tow line, furnished by the tug Edmond J. Moran were to be fitted. It is alleged that respondent "supervised and directed the make-up of the tow and in accordance with its directions the bridles and tow line furnished by said tug were connected to the shackles and padeyes fitted to the barge by respondent." The libel further alleges that after the barge BD 6074 had broken adrift "the towing cable and bridles were retrieved and found to be in good order and condition as they were when connected to the barge at the beginning of the voyage."

The exceptive allegations filed by respondent allege that libelant, Moran Towing and Transportation Co., Inc., owned and supplied the shackles which are alleged to have parted and that these shackles were connected to the barge's padeyes by and under libelant's supervision. Moreover, it is alleged that the padeyes were installed at the time of the construction of the BD 6074 and not welded to the barge by respondent as alleged in the libel, and that libelants supervised and directed the make-up of the tow and not respondent.

Respondent contends that these exceptive allegations raise issues of fact which must be determined in accordance with Article 29 of the contract and that its motion to stay this suit should be granted.

Article 29 of the contract reads as follows:

"Article 29. Disputes.—Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive; *provided* that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

■ There is no doubt that the parties have the right to make such agreements and the courts the duty to enforce them. As was said by Mr. Justice Black in United States v. Moorman, 1950, 338 U.S. 457, 460, 70 S.Ct. 288, 290, 94 L.Ed. 256—

"Contractual provisions such as these have long been used by the Government. No congressional enactment condemns their creation or enforcement * * *."

Mr. Justice Black went on to say—

"* * * It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 309, 27 S.Ct. 535, 539, 51 L.Ed. 811. But this does not mean that hostility to such provisions can justify blindness to a plain intent of parties to adopt this method for settlement of their disputes. Nor should such an agreement of parties be frustrated by judicial 'interpretation' of contracts. If parties competent to decide for themselves are to be deprived of the privilege of making such anticipatory provisions for settlement of disputes, this deprivation should come from the legislative branch of government." 338 U.S. at page 462, 70 S.Ct. at page 291.

■ It seems clear that it is the "clear intent" of the parties that "any dispute concerning a question of fact arising under this contract" should be decided by the Contracting Officer. There is no doubt that the present controversy centers around a question of fact, i. e., whether the fault for the crane barge breaking loose lies with the libelants or with respondent. Article 29 "is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. [The] Article * * * is controlling as to all disputes 'concerning questions arising under this contract' unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to

matters arising under the contract. United States v. Blair, supra, at page 735, 64 S.Ct. 820; United States v. Callahan Walker Co., 317 U.S. 56, 61, 63 S.Ct. 113, 87 L.Ed. 49. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court." United States v. Joseph A. Holpuch Co., 1946, 328 U.S. 234, 239, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192.

■ Libelants contend that the dispute clause has no application to the present dispute. It is their contention that the final sentence of the disputes clause limits that clause to disputes which arise during performance. The final sentence of Article 29 provides—

"Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

I do not agree with libelants' interpretation that Article 29 is "to provide a quickly available and final forum for the settlement of disputes during performance so that performance will not be delayed." Article 29 applies to "any dispute concerning a question of fact arising under this contract." The final sentence is to avoid any delay arising out of any dispute which might arise during performance of the contract but the entire disputes clause applies to any dispute concerning a question of fact arising under the contract whether it arises during performance of the contract or after its completion.

Libelants rely on four cases to support their contention that the disputes clause only applies during performance. These cases are, however, distinguishable from the present case. In E. I. DuPont De Nemours & Co. v. Lyles & Lang Const. Co., 4 Cir., 1955, 219 F.2d 328 the court states that the questions involved were almost altogether questions of law and even where disputes as to fact existed they involved not pure questions of fact but mixed questions of law and fact. In the present case the dispute involves pure questions of fact. In United States v. Duggan, 8 Cir., 1954, 210 F.2d 926 the contract was terminated pursuant to a termination clause in the contract and the court found that the disputes clause did not apply after such termination. In the present case the contract was not terminated. In Lundstrom v. United States, D.C.Or.1941, 53 F.Supp. 709 the court found the dispute was not one of fact but one of the interpretation of the contract. In Liberty Products Corp. v. H. K. Ferguson Co., D.C. E.D.N.Y.1950, 90 F.Supp. 673 the disputes clause was not limited to questions of fact but covered all disputes. Moreover, that clause just provided that the dispute should be decided by a representative of the Atomic Energy Commission without any right of appeal being provided for. In the present case an appeal to the Secretary is provided for with a further determination by a court if the decision is fraudulent, capricious, arbitrary, or is so erroneous as to imply bad faith, or is not supported by substantial evidence.

■ Libelants also contend that the Contracting Officer has already decided all disputes of fact in their favor and that the disputes clause has been waived. I find no conduct on the part of respondent which would constitute a waiver, nor do I find that the Contracting Officer has decided all disputes of fact by his paying the balance of the contract price to libelants. All the Contracting Officer did was to pay the balance. He did not make any findings of fact nor render a decision in writing. Mere payment is not enough.

■ Libelants' final point is that since there was no dispute of fact when the libel was filed this court acquired jurisdiction and cannot be divested of it by a subsequently asserted claim of a dispute of fact. Under libelants' reasoning, as soon as a libel or complaint is filed, the court would acquire jurisdiction and could never be divested of it even though the opposing party has not as yet answered. There is no merit in libelants'

860

position. Respondent has not asked that this suit be dismissed for lack of jurisdiction but has asked for a stay.

Respondent's motion for a stay is granted but the libel is not dismissed.

Libelants' motion to overrule respondent's exceptive allegations is denied.

It is so ordered.