STATE HIGHWAY COMMISSION OF WYOMING, Appellant (Defendant),

v.

BRASEL & SIMS CONSTRUCTION CO., INC., a Wyoming corporation, Appellee (Plaintiff).

BRASEL & SIMS CONSTRUCTION CO., INC., Appellant (Plaintiff),

v.

STATE HIGHWAY COMMISSION OF WYOMING, Appellee (Defendant).

Nos. 83-92, 83-93.

Supreme Court of Wyoming.

Sept. 12, 1984.

Rehearing Denied Nov. 1, 1984.

A.G. McClintock, Atty. Gen., Glenn A. Williams, Senior Asst. Atty. Gen., Lawrence A. Bobbitt, III, Asst. Atty. Gen., A. Joseph Williams, Sp. Asst. Atty. Gen., Cheyenne, for State Highway Commission of Wyoming.

John T. Pappas and L.M. Chipley, Western Law Associates, P.C., Lander, for Brasel & Sims Construction Co., Inc.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

Brasel & Sims Construction Company, Inc. (Brasel & Sims), an experienced builder of roads in this state, brought this action against the State Highway Commission of Wyoming to recover damages it sustained in performing a highway-construction contract. Brasel & Sims alleged that the contract, ostensibly a one-year project, required two years to complete and entailed unanticipated expenses as a result of the failure of the state highway department[1] to supply an adequate source of water and to accurately represent the quality of the designated gravel pit. Following a trial to the court, a judgment was entered in favor of Brasel & Sims in the amount of $1,945,-520.84.

On appeal, the commission concedes that the evidence is sufficient to support a finding of liability. The commission takes the position, however, that the dispute-resolution clause in the contract, which authorizes the department engineer and the commission to decide questions arising under the contract, should have been enforced by the trial court to preclude recovery by Brasel & Sims. The commission also challenges Brasel & Sims' method of proving damages at trial. Brasel & Sims cross-appeals the refusal of the trial court to award actual or prejudgment interest. We will affirm the judgment of the district court in all respects.

## BACKGROUND

Brasel & Sims and the commission entered into a contract on October 19, 1978, for the construction of a portion of Wyoming Highway No. 387. Article VII of the contract specified the manner in which disputes were to be resolved:

"VII. Any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Engineer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Engineer shall be final and conclusive unless, within 30 days from the date of receipt of such conclusion, the Contractor mails or otherwise furnishes the Wyoming State Highway Commission written appeal. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal."

The contract also adopts by reference the Wyoming Highway Department Specifications for Road and Bridge Construction, 1974. Section 105.17 sets out a claims procedure:

"105.17 CLAIMS FOR ADJUSTMENTS AND DISPUTES.

"If in any case the Contractor deems that additional compensation is due him for work or material not clearly covered in the contract or not ordered as extra work as defined herein, or that contract time be extended, the Contractor shall notify the Engineer in writing within a reasonable time of his intention to make claim for such additional compensation or extended time. This notification should also specify the basis for the claim. The Engineer will acknowledge receipt of said intention and advise the Contractor that consideration will be given the claim when it is submitted in a formal manner with complete and thorough justification for every item.

"Within sixty (60) days from the date of the Contractor's formal claim, the Department will render to the Contractor a judgment in writing. This judgment shall be final and binding upon both parties to the contract unless the Contractor files within thirty (30) days of the date of said judgment a written notice of appeal

---

1. Section 24-2-101, W.S.1977, 1984 Cum.Supp., creates the state highway department consisting of a state highway commission and a state highway superintendent. Seven commissioners, one from each highway district, are appointed by the governor, with the advice and consent of the senate, to serve six-year terms. Section 24-2-105, W.S.1977, provides that the commission shall appoint a state highway superintendent who "shall be experienced and skilled in highway and bridge construction and maintenance * * *."

with the Secretary of the Highway Commission. Subsequent to the filing of the notice of appeal, the claim will be pursued according to the Contractor's Claim Procedure adopted by the Highway Commission.

"Under no circumstances will a claim be considered if submitted later than sixty (60) days after publication of first advertisement that work has been accepted as complete.

"If the claim is found to be just, it will be paid on the basis of actual costs to which no percentage will be added. The justification for payment may be based upon an audit by the Department of the Contractor's project records and cost accounting system."

Pursuant to these provisions, Brasel & Sims filed its claim to recover the costs it had incurred as a result of alleged breaches by the highway department. The claim was ultimately denied by the commission, and this denial was affirmed by the district court, upon Brasel & Sims' petition for review. Brasel & Sims appealed that decision to this court. *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming*, Wyo., 655 P.2d 265 (1982). We dismissed the appeal, holding that the district court, and therefore this court, lacked jurisdiction to entertain a petition for review since the highway commission had no authority to decide the contract dispute in the first place. We noted in that case that Brasel & Sims had filed a separate action in district court seeking recovery of the same damages that it had claimed by way of the administrative procedure. We said:

"Appellant's [Brasel & Sims'] relief may be found in its action on the contract

filed in the District Court, Laramie County, First Judicial District." 655 P.2d at 268.

At trial in the present case, Brasel & Sims used the "total cost" method to calculate and prove damages. By subtracting the estimated cost of doing the work under conditions as represented from the actual cost of doing the work in the nine areas affected by the breach,[2] Brasel & Sims arrived at a damages claim of $2,010,552.

The trial court, in its Findings of Fact, approved the costs claimed by Brasel & Sims in five of the nine areas,[3] which costs amounted to $1,887,362. These costs were found by the court to be reasonable:

"THE DEFENDANT BREACHED THE OCTOBER, 1978 CONTRACT AND THE WARRANTIES, AND AS A NATURAL RESULT, THE PLAINTIFF HAS PERFORMED WORK AND SUPPLIED MATERIALS NOT CLEARLY COVERED IN THE ORIGINAL CONTRACT, THE ACTUAL AND REASONABLE COST OF THE EXTRA WORK AND MATERIAL BEING $1,887,362.00, SAID AMOUNT BEING THE DIFFERENCE BETWEEN THE REASONABLE COST OF DOING THE WORK UNDER THE CONDITIONS REPRESENTED AND THE REASONABLE COST OF DOING THE WORK UNDER ACTUAL CONDITIONS."

The court determined, however, that an "equitable and appropriate" award would be $1,691,757.25, the difference between Brasel & Sims' total cost for the entire construction project and the amount of money paid to Brasel & Sims by the highway department for the entire project. The court allowed a profit of 15% of the

2. Brasel & Sims claimed that it incurred the following increased costs as a result of the highway department's breach of contract:

| "Water | $ | 347,498 |
| "Excavation & Embankment | | 561,903 |
| "Surfacing | | 953,642 |
| "Bridge and Riprap | | 21,356 |
| "Fence | | 52,514 |
| "Revegetation | | 44,036 |
| "Reclamation | | 15,742 |

| "Traffic Control | | 18,373 |
| "Guardrail | | 5,488 |
| "Subtotal | | $ 2,020,552 |
| "Profit at 15% | | 303,083 |
| | | $ 2,323,635" |

3. The trial court approved the additional costs incurred by Brasel & Sims for water, excavation and embankment, surfacing, reclamation, and guardrail.

additional cost for a total award to Brasel & Sims of $1,945,520.84.

## ISSUES ON APPEAL

The commission presents the following issues for our consideration on appeal: "THE DISTRICT COURT ERRED IN REFUSING TO ENFORCE THE DISPUTES CLAUSE OF THE CONTRACT," and

"THE PLAINTIFF FAILED TO PROVE ITS DAMAGES."

Brasel & Sims raises a single issue:

"Did the court err in not awarding either actual interest or statutory pre-judgment interest?"

## I

In analyzing the effect of the dispute-resolution provisions in the construction contract, it is helpful to review our earlier decision involving these parties in which we dismissed the appeal. *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming,* supra. The crux of that opinion is that administrative agencies, absent statutory authority, may not adjudicate contract disputes. We said that agencies are free to establish claims-resolution procedures for the negotiation of additional compensation or the adjustment of disputes. Such procedures, however, cannot constitute formal administrative proceedings under the Wyoming Administrative Procedure Act, §§ 16-3-101 through 16-3-115, W.S.1977, unless an express statute authorizes the agency to adjudicate its contract disputes.[4] No such enabling legislation exists with respect to the state highway commission:

" * * * We can find no statutory authority for the appellee [State Highway Commission of Wyoming] to conduct a hearing and make findings, conclusions of law, and a decision in a dispute between itself and one of its contractors, which is reviewable by the district court on a peti-

tion for review." *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming,* supra, 655 P.2d at 268.

Thus, as an aggrieved party, Brasel & Sims' remedy was a suit on the contract in a court of law, where it could obtain a trial de novo, notwithstanding the adjudicatory process established by the commission for resolving contractual disputes.

Our holding in *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming,* supra, does not prevent parties from agreeing to submit disputes to one of the parties to the contract and further agreeing to be bound by that party's decision. Such provisions are fairly common in construction contracts and are enforceable in court. *United States v. Moorman,* 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950). These provisions are valid because the court, not the agency, performs the judicial function of interpreting the terms of the contract and their legal effect in accordance with the familiar requirements of good faith and absence of collusion, fraud or mistake. *United States v. Moorman,* supra; 3A Corbin on Contracts, § 652, pp. 121–131. We recognized the validity of self-imposed prerequisites to the initiation of a suit in *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming,* supra, 655 P.2d at 268:

" * * * Parties to a contract can create valid conditions precedent to the right to bring an action and the claim will not accrue until the condition has been performed."

To the same effect, see *United States v. Joseph A. Holpuch Company,* 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); *United States v. Blair,* 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039, reh. denied 322 U.S. 768, 64 S.Ct. 1052, 88 L.Ed. 1594 (1944).

---

**4.** Section 16-3-101(b)(ii) defines a "contested case" as follows:

"'Contested case' means a proceeding including but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing * * *."

It is undisputed that Brasel & Sims invoked the dispute-resolution provisions set out in the construction contract. It is also undisputed that the commission, pursuant to its authority under the pertinent contract provisions, denied Brasel & Sims' claim for additional compensation. The determinative question, then, is what effect the courts should give to these contract provisions and to the corresponding decision of the commission.

The commission contends that the trial court should have enforced the written agreement of the parties and deferred to the decision of the commission which denied Brasel & Sims' claim for additional compensation. In support of this contention, counsel for the commission quote in their brief from 3A Corbin on Contracts, supra, at 121–122:

> "In construction contracts it is not unusual for the parties to submit certain questions to the architect, engineer, or other supervising expert, and to agree that his finding or decision shall be final and conclusive. Other kinds of contracts, also, may contain similar provisions. There is nothing illegal or contrary to general public policy in such provisions. Usually, however, the supervising expert is in the pay of one of the parties and not of the other. This makes it necessary, in giving conclusive effect to the expert's decision, for the court to make very sure that the decision was rendered in good faith, without improper collusion with any one, and after a fair investigation of the facts."

■ The force and validity of the commission's position depends upon whether the parties have in fact agreed to treat the finding of the commission as final and binding. The intention of the parties to submit their disputes to conclusive determination by a contractually designated agent should be made manifest by plain language. *United States v. Moorman*, supra, 338 U.S. at 462, 70 S.Ct. at 291. Finality of the arbiter's decision is not to be implied. *Mercantile Trust Company v. Hensey*, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811 (1907).

In *O.K. Johnson Electric, Inc. v. Hess-Martin Corporation, Inc.*, 204 Kan. 478, 464 P.2d 206 (1970), the Supreme Court of Kansas, in interpreting a construction contract, refused to treat the decisions of the architect and prime contractor as final, notwithstanding the contract provision that payment to the subcontractor was subject to their approval:

> " * * * In building and construction contracts the parties frequently agree that the finding of an architect or other designated person in respect to quantity and character of work done shall be conclusive, in which case it can only be impeached upon the ground of fraud, gross mistake, bad faith, undue influence, or some other good cause. * * *
>
> \* \* \* \* \* \*
>
> "The 'subject to approval' clause now under consideration lacks plain and unequivocal language indicating a binding, conclusive effect was to be given any decision rendered by Hess and the architect." 464 P.2d at 210–211.

■ In the instant case, the parties agreed to follow certain dispute-resolution procedures as set out in Article VII of the contract and § 105.17 of the Specifications, supra. However, these provisions make no mention of a final, binding or conclusive decision by the commission. Article VII specifies that:

> " * * * The decision of the Engineer shall be final and conclusive unless, within 30 days from the date of receipt of such conclusion, the Contractor mails or otherwise furnishes the Wyoming State Highway Commission written appeal."

We believe that this provision is properly interpreted as a 30-day limitation of actions rather than as a finality clause. It is true that the engineer's decision binds the parties unless an appeal is taken to the commission within 30 days. However, the initiation of the appeal process deprives the engineer's decision of finality, and the contract fails to specify that the commission's decision shall bind the parties.

■ The same effect must be given to the claims procedure set out in § 105.17 of

the Specifications. That section provides in pertinent part:

" * * * The Department will render to the Contractor a judgment in writing. This judgment shall be final and binding upon both parties to the contract unless the Contractor files within thirty (30) days of the date of said judgment · a written notice of appeal with the Secretary of the Highway Commission. Subsequent to the filing of the notice of appeal, the claim will be pursued according to the Contractor's Claim Procedure adopted by the Highway Commission."

Again, no provision is made for a final decision by the commission. As we said earlier, the "Contractor's Claim Procedure" is invalid under our holding in *Brasel & Sims Construction Co., Inc., v. State Highway Commission of Wyoming*, supra, since the procedure contemplates administrative adjudication of the contract dispute, subject only to limited review in court.

We conclude that the parties did not manifest by plain language an intent to be bound by the commission's decision in this case.[5] Accordingly, no final or conclusive dispute-resolution clause existed for judicial enforcement, and the trial court was free to consider the evidence and resolve the parties' dispute, independent of the decision made by the commission.

## II

The commission contends that Brasel & Sims calculated and attempted to prove damages using a discredited method and, therefore, it failed to establish with sufficient certainty those injuries that resulted from the department's breach. We will hold that the total-cost standard (the difference between actual costs and bid or estimated costs), employed by Brasel & Sims, was appropriate under the facts of this case and that the actual award as determined by the trial court represented a fair and reasonable approximation of the damages sustained by Brasel & Sims as a result of the department's breach.

■ The proper measure of damages is the amount of the contractor's extra costs directly attributable to the government's breaches. *J.D. Hedin Construction Company, Inc. v. United States*, 347 F.2d 235, 259, 171 Ct.Cl. 70 (1965). Obviously, the preferable method for calculating such losses would be to itemize and total the cost of each piece of equipment or material and each man hour necessitated by the unanticipated conditions encountered in performing the contract. Such exactness is not always possible or necessary.

■ The total-cost method of computing recovery, while generally disfavored by the courts, is permissible where the breach or unexpected conditions pervade substantial areas of performance. *J.D. Hedin Construction Company, Inc. v. United States*, supra. The United States Court of Claims in *WRB Corporation v. The United*

5. We note that the standard dispute-resolution clause included in the federal government contract interpreted by the United States Supreme Court in *Crown Coat Front Co., Inc. v. United States*, 386 U.S. 503, 506, n. 1, 87 S.Ct. 1177, 1179, 18 L.Ed.2d 256 (1967), leaves no room for doubt as to the conclusive effect of the agency's decision:

"'Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal ad-

dressed to the Secretary, and *the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive.* In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.'" (Emphasis added.)

*States*, 183 Ct.Cl. 409. (1968), set out the requirements for use of the total-cost method to prove damages:

" * * * The acceptability of the method hinges on proof that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses. * * * " 183 Ct.Cl. at 426.

The case at bar meets these tests.

Brasel & Sims isolated the areas of the construction project affected by the breach and applied the total-cost method to calculate increased costs with respect to each area. Essentially, the inadequate water supply and the unexpected deposits of clay in the gravel pit resulted in delays throughout the entire construction period, the cost of which would have been difficult, if not impossible, to calculate by any other method. The daily difficulties encountered in crushing and handling wet clay or in excavating large quantities of dirt with insufficient water resulted in additional costs which were not subject to precise measurement.

We find pertinent the analysis of the Court of Claims in *J.D. Hedin Construction Company, Inc. v. United States*, supra, in approving the total-cost method used by the contractor to calculate its reimbursement for additional foundation work caused by faulty government specifications:

"Defendant challenges the manner in which these costs were computed by arguing that the commissioner's report erroneously accepts the 'total cost' theory expressly rejected by us in [citations]. We are aware that we have on a number of occasions expressed our dislike for this method of computing breaches of contract damages, and we do not intend to condone its use as an universal rule. However, we have used this method under proper safeguards where there is no other alternative, since we recognized that the lack of certainty as to the amount of damages should not preclude recovery. [Citations.] In all these cases the fact of government responsibility for damages was clearly established; the question was how to compute reasonable damages where no other method was available. [Citation.] We think this is such a case. The exact amount of additional work which plaintiff had to perform as a result of the foundation problem is difficult, if not impossible, to determine because of the nature of the corrective work which was being performed. The adverse weather conditions during the extended period in which the excavations remained open caused a myriad of problems. Additional trenching, form construction, and pumping of surface water became necessary. Re-excavation by hand was sometimes required. The extreme muddy conditions caused difficulties and slowed down performance. There is no precise formula by which these additional costs can be computed and segregated from those costs which plaintiff would have incurred if there had been no government-caused difficulties. However, the reasonableness and accuracy of plaintiff's estimate, which was prepared by an experienced engineer whose qualifications have been unchallenged, have been established. * * Plaintiff on prior occasions had successfully constructed a number of large projects for the Veterans Administration. Plaintiff has established the fact that it performed additional work. Moreover, the responsibility of defendant for these damages is clear. The only possible method by which these damages can be computed is by resort to the 'total cost' method. Under such circumstances, * * we think that the government should not be absolved of liability for damages which it has caused, because the precise amount of added costs cannot be determined." 347 F.2d at 246–247.

In similar fashion, we know of no precise formula by which the costs of coping with insufficient water and adulterated gravel can be isolated from those costs which Bra-

sel & Sims would have incurred in the absence of the department's breach. The pervasive nature of the problems rendered an exact calculation of losses impossible or highly impracticable. Additional cases in which review courts have approved the application of the total-cost theory under circumstances similar to the instant case include *Moorhead Construction Co., Inc. v. City of Grand Forks*, 508 F.2d 1008 (8th Cir.1975); *Zook Brothers Construction Company v. State*, 171 Mont. 64, 556 P.2d 911 (1976); and *Thorn Construction Company, Inc. v. Utah Department of Transportation*, Utah, 598 P.2d 365 (1979).

As to the second element of the WRB Corporation test, the evidence supports the finding of the trial court that Brasel & Sims' bid or estimate was realistic in all respects. The estimator for the highway department testified that Brasel & Sims' bid was reasonable and that he recommended its acceptance by the commission as the low bid on the project.

The commission asserts that Brasel & Sims failed to satisfy the third requirement of the WRB Corporation test, since Brasel & Sims offered no evidence that its proven, actual costs were reasonable. However, expert witnesses from two independent construction companies testified as to the reasonableness of the manner in which Brasel & Sims handled problems created by the department's breach. More importantly, proven, actual costs in contract-claim cases are presumed reasonable, and the burden was on the commission to rebut this presumption with evidence that the costs were unreasonable. *Oliver-Finnie Company v. United States*, 279 F.2d 498, 150 Ct.Cl. 189 (1960); *Sornsin Construction Company v. State*, 180 Mont. 248, 590 P.2d 125 (1978). Since the commission failed to refute the reasonableness of Brasel & Sims' extra costs, we cannot reject the total-cost method on the ground that Brasel & Sims' costs were unreasonable.

As to the fourth requirement of the WRB Corporation test, the commission does not challenge on appeal the trial court's factual finding that no error or mismanagement on the part of Brasel & Sims contributed to the additional expenses. The evidence indicated that Brasel & Sims had adjusted its estimate upward to reflect anticipated day-to-day problems on the job. Thus, normal delays caused by Brasel & Sims were included in the elevated estimate, thereby reducing the claims for additional compensation to cover problems which arose as a result of breaches by the department.

The trial judge concluded that the total-cost method, as applied by Brasel & Sims to those areas of the project affected by the department's breach, constituted a reasonable and sufficient basis upon which to award damages. The court made the following determination as part of its extensive Findings of Fact:

" * * * IN ANY CASE, AND IN PARTICULAR IN THIS CASE, WHERE THE ACTUAL DAMAGES SUFFERED ARE OF SO SUBSTANTIAL AN AMOUNT, AND WHICH DAMAGES OCCURRED OVER SUCH A LONG PERIOD OF TIME, MATHEMATICAL PRECISION AND EXACTITUDE IS NOT NECESSARY IN THE COMPUTATION OF DAMAGES. ALL THAT IS REQUIRED IS THAT THE DAMAGES BE REASONABLE. THE COMPUTATION USED BY PLAINTIFF IS A REASONABLE COMPUTATION WHICH HAS RESULTED IN THE CALCULATION OF REASONABLE DAMAGES. IN ADDITION, WHERE DAMAGES ARE TO BE CALCULATED FOR MISREPRESENTATION WHICH ALLEGEDLY INDUCED A BID AND ESTIMATE LOWER THAN WOULD BE SUBMITTED IF ACTUAL CONDITIONS WERE KNOWN, THE CORRECT MEASURE OF DAMAGES IS PLAINTIFF'S OUT–OF–POCKET LOSS. IN COMPUTING SUCH LOSS, IT IS NECESSARY TO CONSIDER BOTH THE ESTIMATE AND THE ACTUAL COST. A CONTRACTOR GENERALLY, AND PLAINTIFF SPECIFICALLY, IS NOT REQUIRED TO HAVE A LAW-

YER IN HIS HIP POCKET, AT A JOB SITE, DURING CONSTRUCTION OF A ROAD. THE METHOD PLAINTIFF USED TO COMPUTE ITS DAMAGES IS REASONABLE UNDER THE CIRCUMSTANCES AND CERTAIN ENOUGH TO BASE AN AWARD OF DAMAGES."

The court found that the reasonable cost of the additional work and material necessitated by the breach and proven by Brasel & Sims amounted to $1,887,362. However, the court concluded that the concepts of equity demanded that the award be reduced to the difference between the actual cost of the entire project and the total amount paid to Brasel & Sims by the commission.

" * * * THE COURT FINDS THAT THE SUM OF $1,887,362.00 EXCEEDS THE SUM OF $1,691,757.25 WHICH IS THE DIFFERENCE BETWEEN THE TOTAL ACTUAL COST OF THE PROJECT AND THE TOTAL PLAINTIFF HAS BEEN PAID AND THAT IT WOULD NOT BE EQUITABLE TO EXCEED THAT AMOUNT AND THUS FINDS THAT JUDGMENT IN THE AMOUNT OF $1,691,757.25 WOULD BE EQUITABLE AND APPROPRIATE."

Using the increased costs established by Brasel & Sims as a basis, the court arrived at a final award which it considered equitable under the circumstances. By taking into consideration Brasel & Sims' costs for the entire project, the court offset the increased costs in the affected areas by any savings in costs achieved by Brasel & Sims in the nonaffected areas.

■ This procedure, whereby the trial judge bases his award on the costs claimed by the contractor, but reduces the amounts, has been termed a "jury type" verdict. *Metropolitan Sewerage Commission of the County of Milwaukee v. R.W. Construction, Inc.*, 78 Wis.2d 451, 255 N.W.2d 293 (1977). Such awards are appropriate where the contractor has been injured by unanticipated conditions, liability is clear, no reliable method exists to assess specific damages, and the evidence is sufficient to make a fair and reasonable approx-

imation. . *WRB Corporation v. The United States,* supra, 183 Ct.Cl. at 425; *Metropolitan Sewerage Commission of the County of Milwaukee v. R.W. Construction, Inc.,* supra, 255 N.W.2d at 299–300.

In the present case, the trial judge assessed the breach-related losses in light of the entire project and the amount that the highway department had already paid to Brasel & Sims. In view of our holding that the total-cost method of proving damages was justified under the circumstances of this case, we conclude that the trial court's award of $1,691,757.25 plus 15% profit constitutes a fair and reasonable approximation of the damages sustained by Brasel & Sims as a result of the highway department's breach of contract.

■ Brasel & Sims has not challenged this "jury type" award as too low. The commission, however, would have this court overturn the award on the grounds that Brasel & Sims failed to prove the reasonableness of its costs and that the trial court contrived its own theory of damages. As we said earlier, the commission has presented no data to refute the reliability of Brasel & Sims' costs. Neither has the commission impeached the method employed by the trial court in making its final award. Under such circumstances, we decline to disturb the award determined by the trial judge to be fair and reasonable. We agree with that said by the Supreme Court of Washington in *V.C. Edwards Contracting Co., Inc. v. Port of Tacoma,* 83 Wash.2d 7, 514 P.2d 1381 (1973), in approving an award to a contractor based upon its total costs to complete the project under unanticipated circumstances, less a deduction for overmanning:

"There is substantial evidence to support the court's determination of the total reasonable cost of the project, less a deduction for overmanning. * * * The trier of fact must exercise a large measure of responsible and informed discretion where the fact of damages is proven. * *

* * * * * *

" * * * While the way in which the offset was reached was admittedly speculative, it would seem to us incumbent upon the appellant Port to furnish the trial court with more precise figures to substantiate any claimed larger sum. Having failed to do so, the Port cannot now complain about a lack of precision of proof to substantiate its own claim." 514 P.2d at 1387.

The "total cost" method of computing damages was appropriate under the facts of this case, and the trial judge properly exercised his discretion in basing the final award upon these figures. Under such circumstances, the lack of certainty as to the precise amount of extra costs should not absolve the government of liability for damages which it has caused. *J.D. Hedin Construction Company, Inc. v. United States*, supra.

### III

Brasel & Sims urges this court to hold that the trial court erred in failing to award the actual interest Brasel & Sims paid on money borrowed as a result of the project losses, or, alternatively, to hold that prejudgment interest should have been awarded as a matter of law.

*Direct Damages*

 Interest paid on funds borrowed to maintain liquidity has been considered a normal and foreseeable incident arising from a breach of contract and, therefore, compensable as damages. *Certain-Teed Products Corporation v. Goslee Roofing & Sheet Metal, Inc.*, 26 Md.App. 452, 339 A.2d 302, cert. denied (1975). The trial court, however, refused to award actual interest in the present case, based on its finding that:

" * * * EVIDENCE OF INTEREST * * IS TOO SPECULATIVE AND NOT REASONABLY ASCERTAINABLE AND NO DAMAGES SHOULD BE AWARDED FOR SUCH LOSS."

There was testimony at trial that Brasel & Sims borrowed funds to finance its entire operation, but that its books were not set up to show the amount of interest paid on a particular job. All borrowed funds were commingled. Brasel & Sims' claim for actual interest was calculated from its total claim for costs in the affected project areas and did not take into consideration payments made by the state during the course of performance or cash reserves. We agree with the trial court that Brasel & Sims' evidence of actual interest was speculative and did not support an award. The court is not permitted to speculate or conjecture in awarding damages. *Krist v. Aetna Casualty & Surety*, Wyo., 667 P.2d 665 (1983).

*Prejudgment Interest*

 This court reviewed the requirements for a recovery of prejudgment interest in *Rissler & McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977). There we said that:

"* * * interest is recoverable on liquidated but not on unliquidated claims and * * * a claim is considered liquidated when it is readily computable by simple mathematical computation." 599 P.2d at 31.

We said further that the contested nature of a claim or the need for prolonged litigation does not necessarily cause a claim to be unliquidated.

"The real consideration is the ease with which the amount due can be reached." 559 P.2d at 32.

In the present case, Brasel & Sims was entitled to recover its *reasonable* costs stemming from the contractual breach. That premise was not altered by Brasel & Sims' use of the total-cost standard to compute damages. It follows then that the amount of the claim was not liquidated until the trier of fact had determined what were Brasel & Sims' reasonable costs. See *Rissler & McMurry Company v. Atlantic Richfield Company*, supra, 559 P.2d at 36, McClintock, J., dissenting in part. This rule was applied in *Hopkins v. Ulvestad*, 46 Wash.2d 514, 282 P.2d 806, 810 (1955), where the Washington Supreme Court denied prejudgment interest in an action to foreclose a lien for labor and material furnished in the construction of a house:

" \* \* \* This is not a case involving a promise to pay for labor and material at an *agreed rate* and thus capable of being referred to as a 'liquidated' claim. It is rather a case involving an implied promise to pay at a *reasonable rate* for labor and material furnished, and hence is an 'unliquidated' claim. [Citations.] Until judgment is entered in such a case, there can be no liquidated claim, and hence no interest runs thereon prior to judgment."

We hold that Brasel & Sims' claim for reasonable, additional costs was not liquidated prior to judgment and, therefore, prejudgment interest was properly denied by the trial judge.

Affirmed.

ROONEY, Chief Justice, dissenting, with whom BROWN, Justice, joins.

## THE DISPUTES CLAUSE OF THE CONTRACT SHOULD BE ENFORCED

The majority opinion is 180 degrees contrary to our regularly held propositions relative to contract construction. This contract has a disputes clause. The language of it is plain, it definitely expresses the intent and purpose of the parties, and its spirit and tenor cannot be misunderstood.

The contract is identical to those previously executed by Brasel & Sims Construction Co., Inc. (hereinafter appellee) and under which it has often performed. It provides for *final* dispute determination or *final* arbitration, subject only to one well-defined appeal within the purview of the Wyoming Administrative Procedure Act, § 16–3–101, et seq., W.S.1977, concerning a due process hearing.

Although the majority opinion acknowledges the propriety of finality in a disputes resolution clause, it lamely attempts to ascribe a lack of specified finality in *this* clause. This, of course, is contrary to the rules of statutory construction looking toward ascertainment of the intent of the parties; and it disregards the finality of an arbitration award, except for specified purposes, as recognized by the legislature in the Uniform Arbitration Act, § 1–36–101, et seq., W.S.1977.

We have long recognized the law in support of the foregoing. The rules of contract construction in this respect were summarized in *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980):

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Fuchs v. Goe,* 62 Wyo. 134, 163 P.2d 783 (1945); *Shellhart v. Axford,* Wyo., 485 P.2d 1031 (1971); *Oregon Short Line Railroad Company v. Idaho Stockyards Company,* 12 Utah 2d 205, 364 P.2d 826 (1961). If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. *Pilcher v. Hamm,* Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe,* supra; *Hollabaugh v. Kolbet,* Wyo., 604 P.2d 1359 (1980); *Wyoming Bank and Trust Company v. Waugh,* Wyo., 606 P.2d 725 (1980). And the contract as a whole shall be considered, with each part being read in light of all other parts. *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977); *Rossi v. Percifield,* Wyo., 527 P.2d 819 (1974); *Shellhart v. Axford,* supra; *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979). The interpretation and construction is done by the court as a matter of law. *Hollabaugh v. Kolbet,* supra; *Bulis v. Wells,* Wyo., 565 P.2d 487 (1977); *Shepard v. Top Hat Land & Cattle Co.,* supra.

"If the contract is ambiguous, resort may be had to extrinsic evidence. *J.W. Denio Milling Co. v. Malin,* 25 Wyo. 143, 165 P. 1113 (1917); *Kilbourne-Park Corporation v. Buckingham,* Wyo., 404 P.2d 244 (1965). An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' *Bulis v. Wells,* supra, 565 P.2d at 490. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties con-

cerning its meaning. *Homestake-Sapin Partners v. United States,* 10th Cir.1967, 375 F.2d 507."

Article VII of the contract is plain in providing that:

"VII. Any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Engineer, * * *. *The decision of the Engineer shall be final and conclusive* unless, within 30 days from the date of receipt of such conclusion, the Contractor mails or otherwise furnishes the Wyoming State Highway Commission written appeal. In connection with any *appeal proceeding under this clause,* the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal." (Emphasis added.)

The entire disputes procedure with reference to finality is there set forth. The engineer's decision is final, subject only to any change made by the commission on appeal.

The same is true under Section 105.17 of the Wyoming Highway Department Specifications for Road and Bridge Construction (1974). Within 60 days from the date of a claim for extra work or material

" * * * the Department will render to the Contractor a judgment in writing. *This judgment shall be final* and binding upon both parties to the contract unless the Contractor files within thirty (30) days of the date of said judgment a written notice of appeal with the Secretary of the Highway Commission. Subsequent to the filing of the notice of appeal, the claim will be pursued according to the Contractor's Claim Procedure adopted by the Highway Commission." (Emphasis added.)

The intent to settle the dispute without recourse to the courts (other than for fraud, lack of due process, etc.) is manifest, and appellee well knew it to be so when it entered into the agreement. Appellee has been in the business for a long time. This disputes resolution procedure is essentially the same as in other construction contracts. *Abadou v. Trad,* Alaska, 624 P.2d 287 (1981); *G.L. Rugo & Sons, Inc. v. Town of Lexington,* 338 Mass. 746, 157 N.E.2d 521 (1959); *State Highway Department v. MacDougald Const. Co.,* 189 Ga. 490, 6 S.E.2d 570, 137 A.L.R. 520 (1939).

"With respect to claims arising under the typical government contract, the contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment. The changes clause, for example, permits the Government to make changes in contract specifications. Such changes are not breaches of contract. They do give rise to claims for equitable adjustments which the Government agrees to make, if the cost of performance is increased or the time for performance changed. But whether and to what extent an adjustment is required are questions to be answered by the *methods provided in the contract itself.* The contractor must present his claim to the contracting officer, whose decision is final unless appealed for final action * * *." (Emphasis added.) *Crown Coat Front Co. v. United States,* 386 U.S. 503, 511, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967).

In speaking of dispute clauses, the United States Supreme Court said in *United States v. Joseph A. Holpuch Co.,* 328 U.S. 234, 239, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192 (1946), a dispute clause is

"something more than a dead letter to be revived only at the convenience or discretion of the contractor. It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. *No court is justified in disregarding its letter or spirit.* * * *" (Emphasis added.)

This "unjustified action" is now being taken by this court.

Should there be any question about the intent of the parties as expressed in the plain words of the contract, such intent is

obvious from the contract as a whole and from the recognition that both an administrative trial and a judicial trial are a waste of state money. If the disputes clause is useless at any time the contractor decides to go to court, why have it? The highway department does have it. It was not intended to be a useless thing. Appellee and other contractors know that they are subject to it when they bid and when they enter into the contract. The intent of all parties is to use the disputes clause in a final fashion. The holding of the majority opinion makes use of the clause a waste of time. Eight or nine days were spent in the commission hearing alone. Although the intent was to have the clause mean something, the majority opinion completely disregards this manifest intent. The department might well do away with the clause and burden the court system with the problems intended by the parties to be handled under the clause.

If there is any doubt as to the intent, it should be resolved in favor of arbitrability. *Oil, Chemical and Atomic Workers International Union, Local 2–124 v. American Oil Company*, 528 F.2d 252, 254 (10th Cir. 1976). There is a national policy that doubts should be resolved in favor of arbitration, and parties should not be required to litigate disputes which are subject to arbitration. *American National Bank of Denver v. Cheyenne Housing Authority*, Wyo., 562 P.2d 1017, 1020 (1977).

"‘ * * * It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language. [Citation.] But this does not mean that hostility to such provisions can justify blindness to a plain intent of parties to adopt this method for settlement of their disputes. Nor should such an agreement of parties be frustrated by judicial "in-

terpretation" of contracts. If parties competent to decide for themselves are to be deprived of the privilege of making such anticipatory provisions for settlement of disputes, this deprivation should come from the legislative branch of government.' * * *

"It seems clear that it is the 'clear intent' of the parties that 'any dispute concerning * * * this contract' should be decided by the Contracting Officer. * * * ‘ * * * *No court is justified in disregarding its letter or spirit.* [The] [disputes clause] * * * creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. * * * And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.' [Citation.]" (Emphasis added.) *Moran Towing and Transportation Co. v. United States*, 192 F.Supp. 855, 858, 859 (S.D.N.Y.1960).

The trial court erred in not recognizing the disputes clause of the contract. The action should have been dismissed.[1]

## DAMAGES

Damages were awarded under the "total-cost" method. The majority opinion acknowledges that the "total-cost" method is "generally disfavored" by the courts, but it accepts a one-two-three-four test set forth in *WRB Corporation v. The United States*, 183 Ct.Cl. 409 (1968), and contends that the facts in this case meet that test. The facts in this case are not nearly as favorable for the test as were they in the WRB Corporation case. They were found insufficient in that case. The WRB Corporation court said at pages 426–427:

---

1. Reference is made to my dissent in *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming*, Wyo., 655 P.2d 265 (1982), reflecting a proper resolution of this matter.

"For claims 22 and 26, plaintiff's submission is the 'total cost' standard (the difference between actual expenses and bid or estimated costs). This theory has never been favored by the court and has been tolerated only when no other mode was available *and when the reliability of the supporting evidence was fully substantiated*. See *Turnbull, Inc. v. United States*, 180 Ct.Cl. 1010, 1025–26, 389 F.2d 1007, 1015 (1967); *J.D. Hedin Construction Co. v. United States*, 171 Ct.Cl. 70, 86–87, 347 F.2d 235, 246–47 (1965); *River Construction Corp. v. United States*, supra, 159 Ct.Cl. [254] at pages 270–71 [1962]; *Oliver-Finnie Co. v. United States*, 150 Ct.Cl. 189, 200, 279 F.2d 498, 505–06 (1960); F.H. *McGraw & Co. v. United States*, 131 Ct.Cl. 501, 510–12, 130 F.Supp. 394, 399–400 (1955). The acceptability of the method hinges on proof that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses. See *J.D. Hedin Construction Co. v. United States*, supra, 171 Ct.Cl. at pages 86–87, 347 F.2d at pages 246–47; *Oliver-Finnie Co. v. United States*, supra, 150 Ct.Cl. at pages 197, 200, 279 F.2d at pages 505–06; *F.H. McGraw & Co. v. United States*, supra, 131 Ct.Cl. at page 511, 130 F.Supp. at page 400.

"This case clearly fails some of these tests. *A large measure of our present uncertainty is due to the plaintiff's complete failure to maintain accurate cost records during performance.* The only excuse for this lack of diligence was that plaintiff did not expect to become embroiled in litigation over the Fort Hood project. That is feeble justification for taking refuge in the total-cost approach. Cf. *Commerce Int'l Co. v. United States*, 167 Ct.Cl. 529, 543 n. 10, 338 F.2d 81, 89 n. 10 (1964). *Equally telling is the failure to rebut the Government's evidence that the increased costs were, in some part, due to plaintiff's fault.* The record clearly shows that it had a great deal of trouble keeping its subcontractors in line. In any event, we would · hesitate before concluding that plaintiff sufficiently proved the reasonableness of its estimates or its actual costs. Among . other things, it did not produce a reliable breakdown of its overall estimates and the cost of its concrete and carpentry operations. And since we deny (see Part II infra) significant aspects of claims 22 and 26, the plaintiff's total-cost argument, geared to each claim in its entirety, has little utility." (Emphasis added.)

Here, too, the bid was for an entire job. The claim was for increased costs in only nine areas. The trial court allowed recovery in only five of these areas. However, the damage figure allowed resulted from subtracting the total payments made on the *entire* project from the total cost of the *entire* project. Obviously, appellee should not receive reimbursement for losses on the other parts of the project which resulted from expenses in excess of its bid on them. As the WRB Corporation court said, in such instances the "total-cost" argument "has little utility."

Although the one-two-three-four test is set out in WRB Corporation, it is preceded by the basic requirement that the "reliability of the supporting evidence was fully substantiated." Appellee's own witnesses testified that supporting evidence was lacking, one reason being the failure to realize at the time the adverse consequences thereof. Repeating the quotation from WRB Corporation, supra, "that is feeble justification."

Another deterrent to use of the "total-cost" method, as stated in WRB Corporation, supra, is "the failure to rebut the Government's evidence that the increased costs were, in some part, due to plaintiff's fault." Such rebuttal is completely lacking here. For example, it seems well established that the leaks in the water line *installed by appellee* contributed to the addi-

tional expense resulting from transportation of water.

This being a dissenting opinion, it will serve no purpose to further specify wherein the one-two-three-four test requirements for use of the "total-cost" method were not met in this case. We should not remake the contract for the parties by turning a standard bid-acceptance contract into a cost-plus contract. *Wyoming Machinery Company v. United States Fidelity and Guaranty Company,* Wyo., 614 P.2d 716 (1980); *Laird v. Laird,* Wyo., 597 P.2d 463 (1979). Appellee failed to properly establish its damages.